WILLCUTS, Collector of Internal Revenue, v. GRADWOHL.

No. 9173.

Circuit Court of Appeals, Eighth Circuit.

April 15, 1932.

Rehearing Denied May 20, 1932.

Frank J. Ready, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Lewis L. Drill, U. S. Atty., of St. Paul, Minn., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Martin W. Goldsworthy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellant.

Benedict S. Deinard and Leonard, Street & Deinard, all of Minneapolis, Minn., for appellee.

Before STONE, KENYON, and GARDNER, Circuit Judges.

STONE, Circuit Judge.

This is an action to recover refund of redetermined income taxes, paid under protest, for the years 1923, 1924, and 1925. It involves the applicaton and construction of section 705 of the Revenue Act of 1928 (45 Stat. 881, USCA title 26, § 2705).

The pertinent facts are undisputed and are as follows: Prior to and during the years 1923, 1924, and 1925, appellee was a partner in the firm of Gittelson Jewelry Company which was engaged in retail sales of jewelry on the installment plan. Prior to 1923, income tax returns and tax payments were made by the firm upon the accrual basis. In its original return for 1923, the firm changed to the installment basis and, during that and the two following years, returns and payments were upon that basis; no return being made for installment payments received during those years which arose from contracts made prior to 1923, and, therefore, included in the returns of those prior years upon the accrual basis.

In 1927, an audit of the books of the firm by a revenue agent for the years 1923, 1924, and 1925 resulted in notification of specified increases of income in each of those years and a proposed additional tax thereon was declared. Practically all of the increased tax (all here involved) was based upon inclusion, as income, of installment payments received during those three years arising from contracts made prior to 1923 and returned on the accrual basis, prior to that year. The grounds of assessment of the additional tax were: (1) That such installment payments should have been included, in accordance with Article 42 of Regulation 69 under the Revenue Act of 1926 applying retroactively; and (2) that the firm books did not contain sufficient information for the computation of the prior year amounts and, therefore, not ade-

quate information for computation of income on the installment sale basis. Appellee consented to the deficiency items except the additions to income due to inclusion of the above installments. In February, 1928, under threat of enforcement and under protest, the additional taxes were paid. In April, 1928, and after a reaudit of the firm books, the department admitted a partial overassessment but leaving more than $4,000 of the additional tax intact. Also, there was a finding that the necessary information for computation of firm income on the installment basis was available.

Both parties agree that the matter here, as below, is one purely of law and each of them relies upon section 705 of the Revenue Act of 1928. They differ as to what the law question here is.[1] The statement of neither accords accurately with the facts. The facts (shown above) are that the firm used the accrual basis up to 1923; that it changed, by an original return, to the installment

[1] The "question presented" by this case is stated by appellant to be: "Where a taxpayer, who was regularly engaged in the sale of merchandise upon the installment plan, kept his books, made his returns, and paid his taxes for a period of years upon the accrual basis of computing income, and where such taxpayer changed, effective January 1, 1923, by a seasonable original return to the installment method of computing and returning income—may he recover an overpayment of taxes for the year 1923, 1924, or 1925, without including in the taxable income for those years all income actually realized during same under the installment method of computation?"

The statement of appellee is:
"Where a taxpayer was illegally assessed in 1927 by wrongful disallowance of the installment method, and paid such assessment under protest, can his recovery of the illegal exaction be barred by an attempted imposition of the double tax after the effective date of the relief act (section 705, Revenue Act of 1928), which prohibited the determination of a deficiency upon that basis?"

Or, more fully stated:
"Where a taxpayer was regularly engaged in the sale of merchandise upon the installment plan, kept his books, made his returns, and paid his taxes for a period of years upon the accrual basis of computing income; and

"Where such taxpayer changed, effective January 1, 1923, by a seasonable original return, to the installment method of computing and returning income, and paid his taxes for the years 1923, 1924 and 1925, computing the same, in accordance with the Regulations then in force, to-wit: on the basis of not including an income for such years amounts received on account of sales made prior to January 1, 1923, upon which the full tax had theretofore been paid; and

"Where such taxpayer was in 1928 compelled to pay an additional tax assessed by disallowing the installment method entirely; and

"Where such disallowance was in fact, and was later conceded to be, wrongful; and

"Where such taxpayer files claim for refund and upon reaudit was allowed the installment basis.

"May the Commissioner prevent the taxpayer recovering the illegal exaction, by assessing a new deficiency, after the effective date of the Revenue Act of 1928, upon the double-tax basis, prohibited by sub-section 2, of Sec. 705?"

basis in 1923; that before the 1928 act became effective, the tax in question was assessed and was thereafter collected under duress and protest; that there were two grounds for this additional assessment—one being the state of the firm accounts (not adequate for computation of income on installment basis), and the other being that the installments received on prior contracts (during accrual basis for returns) should be included; that after the act of 1928 became effective, the government abandoned the first ground and retained the collections on the second ground.

The question is, therefore, where a taxpayer changes from an accrual basis to an installment basis and unwillingly pays, before the act of 1928, an additional tax, assessed and collected on the two grounds that the account books are incomplete and that installments received after the change from contracts returned before the change should have been included, and where the government admits, after the above act becomes effective, that the account books are complete but retains the collection on the other ground, does section 705 of that act deny or allow enforcement of refund thereof?

Before this question can be answered by application of section 705 to the facts, that section must be construed. It is a peculiar piece of legislation. It is difficult to understand unless one has in mind the situation which occasioned it and also the result upon that situation which Congress intended this section should have. The logic to be employed is purely the "logic of the situation."

The situation intended to be affected was one which had gradually developed in the endeavors to ascertain the true income of taxpayers subject to taxation under the successive acts passed under authority of the Sixteenth Amendment. A tracing of this development is necessary to an understanding of the situation upon which Congress acted through this section.

The Sixteenth Amendment empowered Congress to tax "incomes, from whatever source derived." There arose differences as to what constituted "income" within the meaning of the amendment. The Supreme Court determined this word in the amendment should be construed "in the ordinary sense" (Eisner v. Macomber, 252 U. S. 189, 204, 40 S. Ct. 189, 192, 64 L. Ed. 521, 9 A. L. R. 1570), "as used in common speech" (Id., 207 of 252 U. S., 40 S. Ct. 189, 193, and see, also, United States v. Kirby Lumber Co., 284 U. S. 1, 3, 52 S. Ct. 4, 76 L. Ed. —, and Merchants' L. & T. Co. v. Smietanka, 255 U. S.

509, 519, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305). So construed, it was held to mean " 'gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets." Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570. This definition has been repeatedly approved. Taft v. Bowers, 278 U. S. 470, 481, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362; Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 174, 46 S. Ct. 449, 70 L. Ed. 886; United States v. Phellis, 257 U. S. 156, 169, 42 S. Ct. 63, 66 L. Ed. 180; Goodrich v. Edwards, 255 U. S. 527, 535, 41 S. Ct. 390, 65 L. Ed. 758.

Since the taxable period was a year, the practical problem was the ascertainment of this "gain" or "profits gained" by the taxpayer for each taxable year. Into this problem entered the important element of the record of transactions as shown by the books of account where such fairly mirrored the business of the taxpayer. Obviously, such books were not conclusive but they were, if complete and well kept, valuable as evidentiary guides to the real income or "gain." The use of such books led into and necessitated consideration of systems of accounting used therein. There were and are two accepted methods of such accounting resting on different bases. One was based on the theory of actual receipts and disbursements during the year. The other—called accrual basis—was based upon liabilities to and against the taxpayer contracted for during the year. Since the former basis dealt with realizations it probably was a truer measure, yet the latter was not unacceptable. Therefore, both were recognized as proper methods to use in ascertaining true income.

However, the problem always existed of ascertaining the true income and the administrative officers were, by the statutes, given broad powers to that end. An early difficulty met by these officers was to ascertain the true annual income of taxpayers engaged in selling on deferred installments continuing beyond a taxable year. If such a taxpayer kept his books and was willing to return his tax and pay upon the accrual basis it was obviously no detriment, ordinarily, to the public revenue to allow this to be done. But when the taxpayer insisted upon dealing with realizations instead of contract potentialities, a troublesome question arose as to how the installments received within the tax year should be treated. Each installment was a part payment on a sales contract which

involved a definite profit, but how was this profit on the entire sale to be apportioned to the installments received during the tax year in course of performance of the contract? Obviously, Congress might determine, within constitutional limits, this matter but it did not expressly do so until the Revenue Act of 1926, § 212 (d), 44 Stat. 23 (26 USCA § 953 (d).

While our immediate concern is with the treatment of received installments during the "transition period" from accrual basis to installment basis—those years in the installment basis period when payments were received under contracts made during the accrual period—yet the definition and growth of the installment basis method are inseparably bound up with the treatment of the above transition period, therefore, it is more intelligible to trace the common history. Prior to the act of 1926, this situation was handled through departmental regulations, promulgated under the broad grant in the several statutes, to the administrative officers to ascertain the true income. This installment situation was first dealt with in Article 117 of Regulation 33 (revised) promulgated January 2, 1918. This was followed by Regulation 45, Art. 42, promulgated April 17, 1919, which defined a rule to measure income under installment sales as being "that proportion of each instalment payment which the gross profit to be realized when the property is paid for bears to the gross contract price." The regulation, in providing how "such income may be ascertained," included in the total receipts for the taxable year "payments received on account of sales effected in earlier years." This regulation thus established and defined an "instalment basis" for estimating income (in addition to the two other recognized bases) and provided for a change to this basis although it still permitted the accrual basis in installment situations. The effect of this regulation where changes were made from the accrual to this installment basis was, obviously, double taxation as to the installments paid after the change on contracts made before the change. This regulation was repeated by a promulgation of December 29, 1919. This situation resulted in Treasury Decision 3082, promulgated October 20, 1920, which modified the regulation to the effect "that where the entire profit from instalment sales has been included in gross income for the year in which the sale was made [accrual basis], no part of the instalment payments received subsequently on account of such previous sales shall again be subject to tax for the year or years in which

received." In compliance with this decision, Article 42 of Regulation 45 was altered to exclude instead of include such installments received during the transition period (1920 Edition, promulgated January 28, 1921).

This situation continued until early in 1925, when there came before the Board of Tax Appeals, for the first time, the question of the validity of ascertaining income in accordance with an installment basis. In the Appeal of B. B. Todd, 1 B. T. A. 762, the Board held that the revenue acts had recognized no such basis and that it was not proper to use such. In that opinion, the Board severely criticised the injustice to other taxpayers in permitting the exclusion, during the transition period, of installments received therein from contracts made prior thereto during the accrual period. Because of this and other decisions,[2] sections 212 (d) and 1208 appeared in the Revenue Act of 1926 (44 Stat. 23 and 130, 26 USCA §§ 953(d), 953a). Section 212 (d) provided that persons regularly dealing in, selling, or disposing of personal property on the installment plan might return as income for a tax year "that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price," and, as to certain casual sales provided they might "be returned on the basis and in the manner above prescribed." Section 1208 made section 212 (d) retroactive beginning with taxes under the act of 1916 and provided, subject to statutory periods of limitations, that any excess imposed theretofore should be credited or refunded as provided in section 284 of the act (26 USCA § 1065 and note). Thus, section 212 (d) settled the propriety of using the installment basis in ascertaining income and placed that basis on "instalment payments received" during the tax year and this was made retroactive as to all taxpayers not barred by the appropriate statute of limitation. This act contained no expressed provision dealing with the transition period. However, the department construed the statute (T. D. 3921, promulgated August 27, 1926) to mean that installments received during the transition period on contract made prior to the change should not be excluded, and this was followed by Regulation 69, Article 42 (promulgated August 28, 1926), to the same effect.

[2] Appeal of H. B. Graves Co., 1 B. T. A. 859; Appeal of Hoover-Bond Co., 1 B. T. A. 929; Appeal of Charles A. Holman, 1 B. T. A. 628; Appeal of Six Hundred and Fifty West End Ave. Co., 2 B. T. A. 958; Appeal of A. R. Dennis, 2 B. T. A. 977; Appeal of Maurice E. Weed, 2 B. T. A. 539.

This position was upheld by the decision of the Board of Tax Appeals, on July 26, 1927, in Appeal of Blum's, Incorporated, 7 B. T. A. 737, and, also, in Warren Reilly v. Commissioner, 7 B. T. A. 1327, on September 7, 1927. That these constructions of the act were in accordance with the intention of Congress is clearly shown by the Committee of Conference Report (69th Cong. 1st Sess. H. Rep. 356, p. 59), where, in speaking of the retroactive feature, it is said: "In the application of this provision it is intended that the instalment provisions of Regulation 45 promulgated on December 29, 1919, will be substantially followed in settling all cases under prior acts and under this bill."

The department construed the retroactive provision of the act to permit *amended* returns to be filed by taxpayers (not barred by limitation) in respect to taxes of prior years beginning with those under the Revenue Act of 1916, and numerous such amended returns were filed. This was the confused and uncertain situation concerning which Congress legislated in the Revenue Act of 1928.

. That act treated installment sales quite fully. As to the *future,* it repealed (in so far as here involved) the provisions of section 212 (d) of the Act of 1926, 26 USCA § 953 (d) and section 44 (a) and (b), 45 Stat. 805, U. S. C. title 26, § 2044 (26 USCA § 2044 (a, b). In the same section (44 (c) it dealt expressly with the period of transition "from accrual to installment basis" and provided that "in computing his income for the year of change or any subsequent year, amounts actually received during any such year on account of sales or other dispositions of property made in any prior year shall not be excluded."

■ Recognizing the exasperating confusion and uncertainty (revealed in the above outline) which had theretofore and then existed as to the installment situation, the act, in section 705 (45 Stat. 881, U. S. C. title 26, § 2705 [26 USCA § 2705]),[3] dealt therewith retroactively. The clearly revealed dominant purpose of the section is to compose and

terminate this confusion and uncertainty in so far as it then existed except as to a narrowly defined class. Regarding the act of 1926 as having approved the method of including payments of installments received during the transition years under contracts prior thereto (70th Cong. 1st Sess. House doc. 139, p. 12), this section is limited to returns filed prior to the effective date (February 26, 1926) of that act. It is dealing with those years when there were Regulations contradictory upon this matter. In so dealing, it has in mind that during some years Regulations permitted exclusion of such installments while during others they required inclusion and that taxpayers made returns in the light of the Regulation in force at the time. Congress intends to protect this class of taxpayers and this alone, therefore, it confines the section to those who have filed "original" returns. It further limits this class to those who made the change to the installment basis prior to the tax year of 1925. A further limit was provisions (contained in section 607–610, both inclusive [26 USCA §§ 2607–2610]) as to limitations within which refunds, credits, and recoveries generally could be had. Another important limit was that no refund or credit could be had unless the taxpayer had "overpaid his taxes for such year, computed by including, in computing income, amounts received during such year on account of sales or other dispositions of property made in any prior year," and no deficiency assessment was allowable unless the taxpayer had "underpaid" through excluding such receipts. Considering these limitations, a concise statement of the class permitted to recover under this section is as follows. The only installment dealer who could have a refund or credit for overpayment was one who had changed from the accrual basis by an original return filed prior to February 26, 1926, for any tax year prior to 1925, and where such overpayment for which recovery was sought resulted from a computation of income including installments received from contracts made in prior years. This clearly meant that no refund or credit was to be allowed arising from inclusion of such install-

---

[3] Sec. 705. "Installment Sales—Retroactive.

(a) If any taxpayer by an original return made prior to February 26, 1926, changed the method of reporting his net income for the taxable year 1924 or any prior taxable year to the installment basis, then, if his income for such year is properly to be computed on the installment basis—

(1) No refund or credit of income, war-profits, or excess-profits taxes for the year in respect of which the change is made or any subsequent year shall be made or allowed, unless the taxpayer has overpaid his taxes for such year, computed by including in computing income, amounts received during such

year on account of sales or other dispositions of property made in any prior year; and

(2) No deficiency shall be determined or found in respect of any such taxes unless the taxpayer has underpaid his taxes for such year computed by excluding, in computing income, amounts received during such year on account of sales or other dispositions of property made in any year prior to the year in respect of which the change was made.

(b) Nothing in this section shall be construed as in any manner modifying section 607, 608, 609, or 610 of this Act relating to the effect of the running of the statute of limitations." (26 USCA § 2705.)

ment payment receipts after the change to the installment basis. On the other hand, the government was denied the right to assess additional taxes for exclusion of such receipts. In short, the purpose was to leave the taxpayer and the government bound by the basis actually used and upon which payments had been actually made.[4]

■ Our next step is to apply this rule to the present facts. The change here was made by an original return, filed for the tax year 1923, before February 26, 1926, and the returns for 1924 and 1925 were also original returns. All of these returns excluded the received installment payments under contracts of prior years. This was in accordance with the Regulations then in force. The taxes were paid in accordance with such returns. Had the matter stopped here this taxpayer would not be here complaining and the government would, under section 705, be barred from declaring a deficiency because of this method of ascertaining income. But the matter went further. Thereafter, the government assessed additional taxes based upon the failure to

[4] In the Report of the Conference Committee (H. Rep. 1882, 70th Cong. 1st Sess. pp. 24-25) it was stated:

"The House bill contained no provision of retroactive application to taxpayers changing from the accrual to the installment basis for reporting income for tax purposes. The 1919 regulations of the Treasury prescribed in such cases the so-called double-tax rule. The 1920 regulations, however, abandoned this rule. In 1925 the Board of Tax Appeals held the 1920 regulations invalid upon the ground that they did not accurately reflect the income of the taxpayer during the transition period. Section 1208 of the revenue act of 1926 was a compromise provision writing into the law for the first time a statutory recognition of the installment basis, and adopting the double-tax rule of the 1919 regulations. In order to relieve taxpayers who have not yet paid the deficiencies resulting from the application of the double-tax rule (in accordance with section 1208) the Senate amendment provides that in such cases the amount of the deficiency will be computed in accordance with the single-tax rule; and inasmuch as the financial status of taxpayers who have already paid an amount sufficient to cover their tax liability when computed in accordance with the double-tax rule, will not be jeopardized, the Senate amendment provides that the double-tax rule shall be applied in computing the right to a refund or credit. The Senate amendment was made applicable to any taxpayer who filed an original return or an amended return prior to the effective date of the revenue act of 1926, and the taxable year 1924 or any prior taxable year.

"The House recedes with an amendment denying relief to a taxpayer who, for example, in 1922, filed an amended return for 1918, 1919, and 1920, shifting from the accrual to the installment basis. This taxpayer, however, will be granted relief for the year in which he filed an original return and for the years following."

In the discussion of this section in the Senate occurs the following (May 15, 1928, 69th Cong. Rec., Part 8, pp. 8697-99):

"Mr. Reed of Pennsylvania. In every case in which the taxpayer changed, it is probable he did it because he thought he was going to get a diminution in his taxes.

"Mr. Caraway. Did it have that effect?

"Mr. Reed of Pennsylvania. In many cases it did. We have put a chart on the wall showing how it did have that effect.

"Mr. Caraway. What does the amendment now accomplish?

"Mr. Reed of Pennsylvania. The amendment substantially allows the status quo to remain.

"Mr. Caraway. In other words, he got it and keeps it?

"Mr. Reed of Pennsylvania. Those who got the advantage keep it, but new men can not come in and claim similar advantages, so that the system has to stop now. * * *

"Mr. Reed of Pennsylvania. The proposed amendment offered by the Senator from Utah means that the situation is to remain as it is; that if the taxpayer tries to get a refund he has to get it on the construction of the law which is most adverse to him, while if the Treasury chooses to pursue him, then that law which is most adverse to it will obtain. It is utterly indefensible logically.

"Mr. Caraway. I think so myself.

"Mr. Reed of Pennsylvania. And yet either of the other conclusions is indefensible.

"Mr. Dill. What will happen if we do not include this provision?

"Mr. Reed of Pennsylvania. Then we have to go to one alternative or the other. We have to say that all the accounts have got to be opened up for a settlement on the accrual basis or else we have to make refunds to everybody who did not account on the installment plan. Both of those are wrong. * * *

"Mr. Reed of Missouri. Mr. President, I want to ask the Senator from Pennsylvania a question to see if I correctly understood him. I understood the Senator to say that if a claim for a refund was made by a taxpayer, the rule of construction to be adopted would be the one most strongly against the applicant.

"Mr. Reed of Pennsylvania. That is correct.

"Mr. Reed of Missouri. If the Treasury Department should undertake to collect the taxes, then the rule of construction would be most strongly against the Treasury.

"Mr. Reed of Pennsylvania. That is correct. Logically that is indefensible, but what it amounts to in substance is saying that the taxpayers who in the past have filed their returns and paid their taxes on either of these regulations shall be allowed to rest at that. They shall not get any advantage by changing retroactively their method of accounting, nor shall the Treasury be heard to say, 'What you did in the past was wrong.' While that can not be defended logically, it is a compromise, apparently satisfactory to the Treasury and to this group of taxpayers, between two alternatives, each of which seems indefensible. We cannot allow them to come back and file new amended returns on the basis that pays the lowest possible tax. That is not fair to the great mass of taxpayers who have paid their taxes and let the thing lie. We can not, on the other hand, in fairness override the regulations retroactively which were in force part of the time and say that the man who filed a return in the spring of 1921, under perfectly good regulations then in effect, shall be assessed an additional tax because he did everything that the law then seemed to require. Hence this compromise.

"Mr. Reed of Missouri. The effect of the compromise, then, if I understand the Senator, would seem to be that if a man makes an application for a return of tax, the rule which was hardest against him will be applied.

"Mr. Reed of Pennsylvania. That is true.

"Mr. Reed of Missouri. While, if the Treasury makes application for additional taxes, the rule which was hardest against it will be applied. *That would look like no one would get anything.*

"Mr. Reed of Pennsylvania. *That is what we hope will result."* (Italics supplied.)

include such receipts in the income for those years. It is true that one of the reasons given was that the accounts of the taxpayer were not sufficient for ascertainment of income on this basis but that does not help the taxpayer since the other ground (that such receipts should have been included) was also stated, and it does not help the government since it concedes error therein in a matter of fact not disputed here nor in the trial court. To both grounds, the taxpayer disagreed and never conceded. The situation before us and the trial court is not affected by this abandoned reason for additional assessment. The payment was made under duress and protest.

The situation thus presented narrows down to the following: The taxpayer would have been protected, under section 705, had he not made payment of the additional tax; section 705 would have prevented recovery (refund or credit) of that payment had it been voluntarily made. Can there be such recovery where the payment was entirely involuntary—being under duress and protest?

We are constrained to determine that there can be no recovery. We cannot say that this exacted tax was illegal. The change in return basis was entirely voluntary on the part of the taxpayer. The opinion in the Appeal of B. B. Todd, 1 B. T. A. 762 reveals the possibilities of tax evasion if receipts during the transition period from contracts made prior thereto are excluded. Congress has expressly adopted the method of inclusion of such receipts (Revenue Act 1928), not to mention earlier action by the Department and the effect of the Revenue Act of 1926. In fact, the exaction of the additional tax, upon the basis of inclusion of such receipts, seems entirely proper. This collection being of a tax legally owing there can be no recovery thereof (Western Union Tel. Co. v. Missouri ex rel. Gottlieb, 190 U. S. 412, 427, 23 S. Ct. 730, 47 L. Ed. 1116) unless there is a right to recover for irregularities (if this was an irregularity) given by statute. Appellee contends that section 705 affords a remedy. While there is much of persuasiveness in the able argument for appellee and in the situation itself, yet section 705 was intended to compose and set at rest a situation. It set forth the condition and the only condition upon which such a tax, once paid, could be refunded or credited. It made no distinction between voluntary or involuntary payments. When we consider the situation dealt with by this section and the dominant purpose of the enactment, we should not disturb the certainty intended by Congress by a construction which will make exceptions where none are expressed nor intended.

The judgment should be reversed, and the case remanded for a new trial.