## JOHN WANAMAKER, PHILADELPHIA, v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 4842, 4843.

Circuit Court of Appeals, Third Circuit.

Dec. 19, 1932.

Robert H. Montgomery, of New York City (Thomas G. Haight, of Jersey City, N. J., and J. Marvin Haynes, of Washington, D. C., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Andrew D. Sharpe and Sewall Key, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Allin H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

These are petitions to review a decision of the Board of Tax Appeals sustaining in part, and disallowing in part, proposed additional income and excess profits taxes for the years 1916 to 1920, inclusive. The management of the two department store corporations, John Wanamaker, Philadelphia, and John Wanamaker, New York, filed consolidated returns for these years, with the exception of the year 1916. The petition for review on behalf of John Wanamaker, New York, for 1916 has been taken to the Second Circuit and is not involved in this proceeding.

The pertinent facts are as follows: In the course of ascertaining profits or losses for any given year, each store took an inventory of its stock on hand at the end of that year. These inventories were taken on the basis of either cost or market price, at the option of the petitioner; that is, the goods were valued at cost, or if, at the time of the taking of the inventory, the wholesale market price was lower than the cost to petitioner, then such wholesale market price was applied. Summary sheets were made up from the detailed inventory sheets and were submitted to the merchandise manager of each store for final revision. The managers made adjustments and corrections resulting in a decrease in the inventory, and the income tax returns were computed on the basis of the adjusted and corrected inventory. The Commissioner disallowed the deductions representing the adjustments and corrections, and increased the net income, assigning as a reason that the

deductions had not been accounted for or substantiated. The Commissioner's action resulted in determination of deficiencies for the years 1916, 1918, 1919, and 1920. The theory of the Commissioner throughout has been that, since the deductions for adjustments and corrections had not been accounted for or substantiated, they were subject to disallowance.

The question as stated by the petitioner is: Was the Board of Tax Appeals justified under the circumstances of this case in holding that petitioner had failed to adequately prove that the inventory adjustments made by the merchandise managers were proper, and in disallowing all of such adjustments?

At the time the case was heard by the Board of Tax Appeals, the inventory sheets had been destroyed, in accordance with the petitioner's practice, and the petitioner asserted that the summary sheet had been turned over to an agent of the Internal Revenue Department and lost by him. The petitioner proved by its accountant and its merchandise managers what the custom was in taking inventory and what procedure it followed in making adjustments and corrections. The position taken by the petitioner is that, since its inventory sheets had been destroyed without fault on its part and since the summary sheet had been lost through the alleged fault of an unidentified agent of the Internal Revenue Department, it was impossible for the petitioner to prove the itemized adjustments any more effectively than it did before the Board, and that it should have been permitted to prove its case by the best evidence available. The Board concluded that the procedure followed by the petitioner was not objectionable, but it sustained the disallowance by the Commissioner of the deduction for adjustments and corrections on the ground that the petitioner had failed to prove the specific items.

■■ The burden of establishing the fact that a deduction, as claimed, was illegally disallowed by the Commissioner, is upon the taxpayer. Reinecke v. Spalding, 280 U. S. 227, 232, 50 S. Ct. 96, 74 L. Ed. 385; Botany Worsted Mills v. United States, 278 U. S. 282, 289, 290, 49 S. Ct. 129, 73 L. Ed. 379; United States v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347. Upon a review of the testimony presented by the petitioner before the Board, it is apparent that the petitioner has not met this burden. Upon this question we cite with approval an excerpt from the decision by the Board: "Barker and Appel, the principal witnesses

for the petitioners on this point, have told us that the adjustments were generally made for each of a number of different reasons. But as to any particular adjustment for any particular year they were unable to testify. Neither could break up the amount of the total adjustment for any year or explain what portion of the total for any year was made for any certain purpose. Neither could state the reasons for the adjustments of any particular year, that is, although they knew that generally adjustments had to be made for the various reasons explained, they could not say that in a given year an adjustment was made for a given reason. They said they could not be more specific in their testimony without the appropriate summary sheets and the accompanying memoranda which they had used in making the adjustments in question. No inventory records have been offered in evidence. The petitioners admit that they have failed to preserve their complete inventory records. Counsel for the petitioners stated that the petitioners had a receipt from the Government for some of the inventory records, and a witness testified that he believed some inventory sheets had been turned over to the Government. But the receipt was not offered in evidence, no demand was made and no subpoena was issued to have the Government produce any particular sheets which might be in its possession, and the testimony was most confusing as to just what sheets, if any, had been turned over to the Government, the time they had been turned over, the person to whom they had been turned over and the relation of this time to March 1, 1923, when the Commissioner first notified the petitioners that he was adding certain of these amounts to income. Quite clearly this testimony does not relieve the petitioners of the consequences of failing to produce adequate proof. If there had been testimony, in sufficient detail, as to all of the separate adjustments going to make up the total for each year, then we would have been in position to have decided the question presented to us and it is conceivable that we might have approved some and disapproved others. Without such testimony we should not blindly approve all because we are convinced that the system was proper and under it there would surely be some necessary adjustments."

The petitioner was given absolute freedom in presenting its case and was not restricted as to the amount or caliber of its proof, but it failed to meet the burden of overcoming the prima facie correctness of the Commissioner's ruling. In Burnet v. Hous-

ton, 283 U. S. 223, 51 S. Ct. 413, 75 L. Ed. 991, the court pointed out that the impossibility of proving a material fact upon which the right to relief depends, simply leaves the claimant, upon whom the burden rests, with an unenforceable claim, and that this misfortune must be borne by him, as it must in other cases, as the result of a failure of proof.

We conclude that the Board was not in error in sustaining the Commissioner's disallowance of the deductions.

■ A part of the petitioner's business comprises the sale of merchandise such as pianos, victrolas, and phonographs, upon an installment basis. Until the year 1920, the petitioner reported these sales on an accrual basis; that is, it reported the entire amount of the sale for the year when made, although it did not receive complete payment until some subsequent year. In 1919 the Commissioner promulgated Regulation 45, Article 42, providing that the income and profits from installment sales might be ascertained "by taking that proportion of the total payments received in the taxable year from installment sales (always including payments received in the taxable year on account of sales effected in earlier years as well as those effected in the taxable year) which the gross profit to be realized on the total installment sales made during the taxable year bears to the gross contract price of all such sales made during the taxable year." The petitioner changed its accounting method from the accrual basis to the installment sales basis in 1920. In computing the profit on collections from installment sales, the petitioner complied with the requirement that the income include payments received in the taxable year on account of sales effected in earlier years as well as those effected in the taxable year. It will thus be seen that the petitioner was subject to a double tax for those sales made prior to 1920 which had already been reported on the accrual basis. On October 20, 1920, the Commissioner amended Article 42 by Treasury Decision 3082 and provided that collections made in the taxable year on installment sales might be allocated to the year when the sale was made if the sale had already been reported on an accrual basis and the taxes paid thereon. In 1923 the petitioner, having learned of the Treasury Decision, revised its computation for the fiscal year ending January, 1920, and computed its profit on installment sales in accordance with this Treasury Decision. This disclosed an overpayment of $138,382.24. The petitioner attempted to satisfy the tax due for 1922 and 1923 by applying the overpayment as a credit. The Commissioner denied the right of the petitioner to compute its income or profits on an installment sales basis and determined the deficiency for the fiscal year in question by computing the income on a straight accrual basis. The Board of Tax Appeals reversed the Commissioner in this respect and held that the petitioner was entitled to compute its income and profits on an installment sales basis, but that the provisions of section 705 (a) (1) of the Revenue Act of 1928, 26 USCA § 2705 (a) (1), prevented the petitioner from taking a credit for the alleged overpayment. The result of the action by the Board is to reverse the Commissioner as to the alleged deficiency and to cancel the claim of the petitioner to a credit for the alleged overpayments. The section in dispute reads as follows: "No refund or credit of income, war-profits, or excess-profits taxes for the year in respect of which the change is made or any subsequent year shall be made or allowed, unless the taxpayer has overpaid his taxes for such year, computed by including, in computing income, amounts received during such year on account of sales or other dispositions of property made in any prior year."

That section provides that no refund or credit shall be allowed for the transition year in which the change from the accrual to the installment sales basis is made unless an overpayment is disclosed when the income is computed by the double tax method. The history and construction of this statute have been discussed with meticulous care by the Court of Appeals for the Eighth Circuit in Willcuts v. Gradwohl, 58 F.(2d) 587. With the construction by that court we are in entire accord, as was the Court of Appeals for the Sixth Circuit. See Hoover-Bond Co. v. Denman, 59 F.(2d) 909.

The Board of Tax Appeals did not err in refusing to enter a judgment of overpayment in favor of the petitioner.

The third contention by the petitioner is that the Board was not justified in disallowing a deduction for bad debts without giving the petitioner an opportunity to furnish proof as to what proportion of such debts should be allocated to installment sales. The petitioner concedes that, if the Board's construction of section 705 (a) (1) of the Revenue Act of 1928 is affirmed, its argument on this point must fall since, under the Board's construction of that act, there is neither a deficiency nor an overpayment for the year

ended January, 1920. We have therefore not gone into the question whether there is any evidence to support the petitioner's contention.

The decision of the Board of Tax Appeals is affirmed.

DAVIS, Circuit Judge (dissenting).

I cannot concur in the decision of the court upon the first question considered in this case which relates to the adjustment of inventories taken at the end of the year on the basis of cost or market price, whichever was lower. The testimony was unequivocal that the detailed inventory sheets prepared in accordance with an approved system contained fair adjustments and correct figures as to the cost or market price, whichever was lower, of the merchandise at the time the inventories were made and that these figures were transferred to summary sheets. These sheets, detailed inventory and summary, showing the reasons for the adjustments in question here, which resulted in a reduction of taxes, were preserved by the petitioner from 1916 until after February, 1921, when the petitioner received notice from the Commissioner of Internal Revenue advising it of additional assessments, as a result of an examination of the petitioner's records by Revenue Agent Gaumer, which lasted five months. These assessments were satisfactorily adjusted and paid. The petitioner then felt that there was no further need for the detailed inventory working sheets for the years in question, and so in accordance with its general practice, they were destroyed. But the *summary* sheets were preserved.

In 1923 another examination of the petitioner's books and records was made in connection with taxes for the years in question. While, as above stated, the detailed inventory sheets had been destroyed, the "summary or work sheets" had been retained, and from these summary sheets the petitioner says that the adjustments in controversy and the reasons therefor can be ascertained and determined. But these sheets were turned over to the revenue agent who made the second examination on which the tax in controversy is based.

Now the Commissioner says that because the petitioner cannot, in the absence of the summary sheets delivered to his agent, give the reasons for "particular" adjustments, the reductions resulting from these adjustments are disallowed.

The petitioner stated in open court at the hearing before the Board that it held a re-

ceipt for these summary sheets. This was not denied nor even questioned. But the Board paid no attention to this fact, apparently for the reason that "the receipt was not offered in evidence, no demand was made and no subpœna was issued to have the government produce any particular sheets." Counsel for the petitioner tried to get the sheets before the hearing as he stated to the Board as follows:

"Mr. Haynes: In view of the statement of counsel, I would like the record to show that quite a few days before this trial came on I made an effort to secure from the Government the summary sheets which had been furnished the revenue agent. I not only made an effort through Mr. Backstrom's office, which contained a large number of files, but I also made an effort through the income tax unit to obtain whatever records they might have, and they were not able to locate any of the sheets; but, as we said before, we have a signed statement from the revenue agent to whom the reports were furnished.

"Mr. Backstrom: Your Honor, I do not like to burden the record too much, but I think I would like to make this motion, that that portion of Petitioner's Exhibit No. 14 which states 'List of deductions to reflect inventory on the basis of cost or market, whichever is lower,' be stricken.

"The Member: Stricken from what?

"Mr. Backstrom: From this exhibit, for the reason that the witness has identified the exhibit, and through his testimony it has been introduced, but he is not able to say whether those figures represent ———"

There the quotation suddenly stopped. Exhibit No. 14 follows:

"Petitioner's Exhibit No. 14.

"Philadelphia Store.

"List of Deductions to reflect inventory on Basis of Cost or Market, Whichever is Lower.

| | |
|---|---|
| January 31, 1915 | $360,407.36 |
| 1916 | 366,005.00 |
| 1917 | 471,710.60 |
| 1918 | 479,379.62 |
| 1919 | 770,583.95 |
| 1920 | 823,666.35." |

Without the use of the summary sheets the petitioner could not tell whether those deductions represented cost or market price, but said with the aid of them it could be done.

The assessment of the Commissioner is presumptively correct. The Board expressly

approved the petitioner's system of determining the adjustments which led to the deductions claimed. This was the system which it had always used. If, however, there is no evidence to overcome the prima facie correctness of the Commissioner's assessment, it must stand. But in this case, the testimony is unequivocal that the adjustments, made under an approved system, were correct and that this could be shown from the summary sheets.

Under these circumstances, it seems to me that the Commissioner cannot sit still without denying the possession of the summary sheets, and say to the petitioner, "you have not proved your case," while he holds in his possession the only material taken from the petitioner which would enable it to make such proof. The burden then shifted to the Commissioner. It became his duty to deny that he had the summary sheets or that from these the correctness of the deductions could be shown.

Of course, as the court says, the burden of establishing that a taxpayer is entitled to a deduction is upon him, but the case of Burnet v. Houston, 283 U. S. 223, 51 S. Ct. 413, 415, 75 L. Ed. 991, which the court cites to show that the petitioner failed to bear the burden in this case, is inapplicable. In that case we said it was a "sheer impossibility" to establish the fact upon which the claim to deduction depended and so excused the taxpayer from proving that fact, but the Supreme Court held that assuming the fact could not be proved, that simply left the taxpayer with an unenforceable claim, a misfortune to be borne by him. But it further said: "We think the record is far from demonstrating the impossibility of supplying evidence from which the required fact might be found." But in the case at bar, the petitioner says that the adjustments are proper, the deductions allowable, and that the evidence turned over to the Commissioner will enable it to establish the correctness of the deductions claimed.

The Board was in error when it said that, "It does not appear that there are complete records with which he (the Commissioner) could make an investigation independently of the proof offered or that he has ever had a reasonable opportunity to make such an investigation," for he had his agent at the petitioner's place of business for five months examining the records and he then had before him the "complete records."

But assuming that the summary sheets will not enable the petitioner to give the reasons for the adjustments resulting in the reduction of taxes, it must be borne in mind that the testimony shows that the final figures contained on the detailed inventory sheets were transferred to the summary sheets and that these inventory sheets containing the reasons for the adjustments and reductions were in the possession of the Commissioner for five months when he audited the returns of the petitioner for the years in question. He must have examined not only the final figures, now contained in the summary sheets, but also the detailed inventory sheets which gave the reasons for the adjustments. He presumptively placed his construction upon them and determined a large additional tax which was adjusted and paid. At that time, both the petitioner and the Commissioner acted in good faith and honestly interpreted the information contained in those sheets. There is not a hint anywhere in the record that those adjustments were not honestly and fairly made by the method which has been approved by the Commissioner. The petitioner believed that after this determination of the Commissioner the detailed inventory sheets would not be required. The petitioner evidently could not keep these sheets forever and so in accordance with its practice it destroyed them. It seems to me that the Commissioner cannot now say, "You must again bear the burden of satisfying me of the correctness of these adjustments and furnish to me again the same detailed proof which you once furnished me and which I now know is unavailable."

Under these facts it would seem that in the interest of justice and the proper administration of law, we ought to remand the case to the Board so that a further hearing may be had and the petitioner given an opportunity to "demand" with subpœna the production of the summary sheets and produce what testimony it can.