## IOWA GUARANTEE MORTGAGE CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9885.

Circuit Court of Appeals, Eighth Circuit.
Oct. 11, 1934.

L. A. Parker, of Des Moines, Iowa (Clyde B. Charlton and L. Call Dickinson, both of Des Moines, Iowa, on the brief), for petitioner.

Helen R. Carloss, Sp. Asst. Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The petitioner, Iowa Guarantee Mortgage Corporation, appealed to the Board of Tax Appeals to review a determination of the Commissioner of Internal Revenue disallowing deductions from income for the years 1924, 1925, and 1926, in the amounts of $2,155.81, $2,312.70, and $8,328.13, respectively.

The facts were stipulated, and those material may best be set out in the language of the Board of Tax Appeals in its findings:

"The petitioner is a South Dakota corporation, duly authorized to operate in the State of Iowa. Its principal office is at Des Moines, Iowa, where it is engaged in what is commonly known as the automobile financing business.

"Dealers in new and used automobiles accomplish sales on the installment basis approximately as follows: The dealer tentatively negotiates a sale and enters into an arrangement with a buyer, who agrees to make an initial payment in some amount and to pay the remainder of the purchase price in twelve equal monthly installments. Upon agreement between the dealer and the purchaser a written contract embodying the terms upon which the deferred payments are to be made is executed and sold to the petitioner, who pays the dealer the cash selling price, less the initial payment, and takes title to the contract by assignment without recourse from the dealer. The automobile is then delivered to the purchaser, who thereafter makes all payments to the petitioner. If the purchaser defaults in any of his installments the whole of the remaining balance of the purchase price becomes payable and the petitioner may repossess and resell the automobile in satisfaction of its lien thereon.

"The contract provides expressly that all installments thereon shall be paid at the office of the petitioner in conformity with a 'certain negotiable promissory note of even date payable to the order of the purchaser and signed, endorsed and delivered by said purchaser to the dealer. The dates and amounts of payments being as follows. * * *' It also provides that 'The purchaser * * * take notice that the dealer for value received, hereby sells and assigns the contract and all the right, title and interest of the dealer in said property to the Iowa Guarantee Mortgage Corporation.'

"The petitioner's gross income, except from minor sources, is made up of its collections under contracts as above set out and its net income from such collections is the difference between the cash and deferred payment price of the automobile, less the amount that it pays for insurance thereon. It is always possible, therefore, to determine the net profit resulting from any single transaction as well as the net profit from all such transactions in any year, with due allowances for defaults in payments.

"Prior to January 1, 1924, the petitioner kept all its accounts on the accrual basis. In its income tax return for 1923 it included in its gross income the amount of $64,877.11 which represented unrealized profits on installment contracts it had acquired in that year.

"As of January 1, 1924, the petitioner changed its method of accounting for the profit involved in installment contracts and thereafter took into income the realizations therefrom as and when received in cash. In its income tax return for 1924 and all succeeding years, it reported as income only the amounts realized from collections in each of such years. The effects of this change in accounting for and reporting income were that no part of the $64,877.11 collected in 1924 on contracts acquired in 1923 was reported as income in 1924; that no part of the unrealized profits involved in the contracts acquired in 1924 was reported as income in that year; and that the books of the petitioner showed a net operating loss in 1924 in the amount of $10,929.66. Upon audit of petitioner's return for 1924 the respondent added to the income therein reported the amount of $64,679.96, made other minor adjustments, and determined the deficiency for such year that is now in controversy.

"From the inception of its operations the petitioner maintained a reserve for bad and doubtful accounts and annual charges thereto were based on its experience in the collection of installments. In his audit of petitioner's return for the years 1924, 1925 and 1926, the respondent disallowed additions to such reserve in the respective amounts of $2,155.81, $2,312.70 and $8,328.13. The parties have stipulated that one-half of one per cent of the face amounts of purchase notes acquired is approximately the collection loss sustained by the petitioner in the years 1920 to 1924, inclusive."

The Board decided its major contention against the petitioner and redetermined deficiencies in tax for the years 1924, 1925, and 1926 in the respective amounts of $7,157.39, $2,035.24, and $1,124.30. From this order, petitioner appeals to this court.

That major contention as stated by the Board of Tax Appeals is "that, in the circumstances as set out in our findings of fact, it properly changed its method of accounting for and reporting income from receipts and deferred payment contracts at January 1, 1924, and that thereafter it was entitled to report such income on the installment basis. If this contention is sound it follows that, if it then comes within the provisions of section 705 (a) (2) of the Revenue Act of 1928, 26 USCA § 2705 (a) (2), no deficiency can be determined against it in respect of the amount of $64,679.96 which was reported as taxable income in a prior year and income tax paid thereon."

As found by the Board, if this $64,679.96 is included in the petitioner's income for 1924, a net profit for that year results and no claim for net loss can be indulged.

Section 705 (a) (2) of the Revenue Act of 1928 provides:

"If any taxpayer by an original return made prior to February 26, 1926, changed the method of reporting his net income for the taxable year 1924 or any prior taxable year to the installment basis, then, if his income for such year is properly to be computed on the installment basis—* * *

"(2) No deficiency shall be determined or found in respect of any such taxes unless the taxpayer has underpaid his taxes for such year, computed by excluding, in computing income, amounts received during such year on account of sales or other dispositions of property made in any year prior to the year in respect of which the change was made."

The contention of the government, succinctly stated, is that said section 705 (a) (2) applies only to a taxpayer who has changed from the cash or accrual basis to the installment basis of reporting income from sales of property. In other words, that the taxpayer must be a vendor to come within this provision of the act. The Board held that the petitioner is not a merchant, but a money-lender; that the property, sold by the dealer, is merely pledged as security for the loans made by the petitioner. This statute has been considered by this court exhaustively in two cases, J. C. Nichols Land Company v. Commissioner (C. C. A.) 65 F.(2d) 437, and Willcuts v. Gradwohl (C. C. A.) 58 F.(2d) 587. In these cases it was held that this section was intended "to compose and set at rest a situation," due to the confusion and uncertainty that had attended the transition from accrual to installment basis.

"The clearly revealed dominant purpose of the section (705) is to compose and terminate this confusion and uncertainty in so far as it then existed except as to a narrowly defined class." Willcuts v. Gradwohl, supra, loc. cit. page 591 of 58 F.(2d).

The Commissioner is not estopped from making deficiency assessments based on in-

cluding as taxable income payments received during the taxable year on installment sales made in preceding years, where there has been an unauthorized application of the installment basis, even though a partial double tax results. J. C. Nichols Land Co. v. Commissioner (C. C. A. 8) 65 F.(2d) 437. In other words, as stated by counsel for the government, "section 705 (a) (2) is not a general provision for the relief of double taxation, but is a statute of repose in one type of case only," to wit, where the taxpayer and his methods of accounting and computation come clearly within its terms.

The specifications of error relied upon are:

"1. The Board of Tax Appeals erred in failing to hold that every taxpayer, whether a seller of property or not, whose net income is correctly reflected by the installment method of accounting, and who by an original return filed prior to February 26, 1926, changed to the installment method of accounting for his income for 1924, is entitled to the benefits of section 705 (a) (2) of the Revenue Act of 1928.

"2. If section 705 (a) (2) of the Revenue Act of 1928 is limited in its application to sellers of property on the installment plan, the Board of Tax Appeals erred in failing to hold that petitioner was a seller of property on the installment plan within the meaning and spirit of the statutes."

1. Examination of earlier statutes and regulations dealing with payments in installments discloses that they uniformly specify that such payments arise from sales of property. Revenue Act 1924, c. 234, 43 Stat. 253, § 202 (e), and Revenue Act 1926, c. 27, 44 Stat. 9, §§ 202 (e), 212 (d), 26 USCA §§ 933 (e), 953 (d); article 117 of Regulations 33, promulgated January 2, 1918; article 42 of Regulations 45 and 62, promulgated under the Revenue Acts of 1918 and 1921; Treasury Regulations 65, under the Revenue Act of 1924; Treasury Regulations 69, under the Revenue Act of 1926. From these citations we gather the consistent purpose of Congress in legislating with respect to installment payments of income and gain or profit taxes. But it is unnecessary to go back of this same Revenue Act of 1928, c. 852, 45 Stat. 791 (26 USCA § 2001 et seq.), to arrive at the subject-matter Congress had under consideration in enacting this comprehensive legislation. On page 805, 45 Stat., we find the subject of installment payments specifically dealt with thus:

"Sec. 44. *Installment Basis.*

"(a) *Dealers in Personal Property.*—Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price." 26 USCA § 2044.

On page 881 of the same volume of the statutes, and a part of this same Revenue Act, is found this section 705 under the heading, "Installment Sales—Retroactive" (26 USCA § 2705). Beyond question this section refers to the same class of dealers as those specified in section 44, supra; that is to say, those who sell or otherwise dispose of personal property on the installment plan. A taxpayer entitled to the benefit of this act must be one who sells or otherwise disposes of personal property. The disposition contemplated is alienation of title in the course of trade. The statute, involving a privilege granted by the government, must be construed favorably to the governmental purpose. Franciscus Realty Co. v. Commissioner (C. C. A. 8) 39 F.(2d) 583; Bank of Commerce v. Tennessee, 161 U. S. 134, 146, 16 S. Ct. 456, 40 L. Ed. 645.

We turn next to inquire whether, under the facts before us, petitioner "was a seller of property on the installment plan within the meaning and spirit of the statutes." We agree with the conclusion of the Board of Tax Appeals that it was not. The sale from the dealer to the purchaser was complete when the contract was assigned to petitioner. Its rights under the contract were those of a mortgagee with security for money loaned. In the agreed statement of facts petitioner is described as "engaged in the business commonly known as automobile finance business, financing the sales of automobiles upon installment payments made by the purchaser." In no sense is it one "who regularly sells or otherwise disposes of personal property on the installment plan." The title of the purchaser comes from the dealer. Possession is delivered to him with the intention of passing immediate ownership subject only to the bare reservation of title to the seller as security for the purchase money. Since benefits of the statute under consideration are available only to one who regularly sells or otherwise disposes of personal property on the installment plan, and

since petitioner clearly does not come within that definition, the order of the Board of Tax Appeals was right and must be upheld. The order of redetermination of the Board of Tax Appeals is affirmed.