DAVENPORT MACHINE & FOUNDRY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30314. Promulgated April 8, 1952.

*Martin F. McCarthy, Esq.*, and *Robert J. Allison, C. P. A.*, for the petitioner.
*Thomas A. Steele, Jr., Esq.*, for the respondent.

OPINION.

Rice, *Judge:* The sole issue is whether petitioner is entitled to report the sale of dehydration equipment sold for credit during the taxable year on the installment sales basis. Section 44 (a) of the Internal Revenue Code provides that a person who regularly sells or otherwise disposes of personalty on the installment plan may report income therefrom on an installment basis under regulations prescribed by the Commissioner with the approval of the Secretary. Such regulations are set forth in the margin.[1]

There is no dispute between the parties as to the figures or adjustments if petitioner is entitled to use the installment basis method of reporting income, and the only question is whether petitioner was "regularly" engaged in the sale of personalty on the installment basis so as to entitle it to use this method of reporting income.

Petitioner manufactures two principal types of equipment—foundry equipment and dehydration equipment. It has never sold any of its foundry equipment on a long-term deferred-payment basis. Beginning in 1937, petitioner began to sell its dehydration equipment on a credit basis, entering into a contract with the purchaser wherein petitioner retained title to the equipment until payment in full had been made. This type of transaction would, therefore, qualify petitioner as a dealer who sells on the installment plan under section

---

[1] SEC. 29.44–1. SALE OF PERSONAL PROPERTY ON INSTALLMENT PLAN.—Dealers in personal property ordinarily sell either for cash or on the personal credit of the purchaser or on the installment plan. Dealers who sell on the installment plan usually adopt one of four ways of protecting themselves in case of default—

(a) By an agreement that title is to remain in the vendor until the purchaser has completely performed his part of the transaction;

(b) By a form of contract in which title is conveyed to the purchaser immediately, but subject to a lien for the unpaid portion of the selling price;

(c) By a present transfer of title to the purchaser, who at the same time executes a reconveyance in the form of a chattel mortgage to the vendor; or

(d) By conveyance to a trustee pending performance of the contract and subject to its provisions.

The general purpose and effect being the same in all of these cases, the same rule is uniformly applicable. The general rule prescribed is that a person who regularly sells or otherwise disposes of personal property on the installment plan, whether or not title remains in the vendor until the property is fully paid for, may return as income therefrom, in any taxable year that proportion of the installment payments actually received in that year which the total or gross profit (that is, sales less cost of goods sold) realized or to be realized when the property is paid for, bears to the total contract price. * * * No payments received in the taxable year shall be excluded in computing the amount of income to be returned on the ground that they were received under a sale the total profit from which was returned as income during a taxable year or years prior to the change by the taxpayer to the installment basis of returning income. * * * Deductible items are not to be allocated to the years in which the profits from the sales of a particular year are to be returned as income, but must be deducted for the taxable year in which the items are "paid or incurred" or "paid or accrued," as provided by sections 43 and 48. A dealer who desires to compute his income on the installment basis shall maintain books of accounts in such a manner as to enable an accurate computation to be made on such basis in accordance with the provisions of this section.

* * * * * * *

If the vendor chooses as a matter of consistent practice to return the income from installment sales on the straight accrual or cash receipts and disbursements basis, such a course is permissible.

29.44–1 (a) of Regulations 111 set forth above, if it could be shown that petitioner regularly engaged in this type of sale. We feel that in the instant case petitioner has proved that it did "regularly" engage in installment sales transactions.

A dealer may report on an installment basis as to a part of his business, if sales as to that part of the business are regularly made on the installment plan. *John Wanamaker Philadelphia*, 22 B. T. A. 487 (1931), affd. (C. A. 3, 1932) 62 F. 2d 401, certiorari denied 289 U. S. 738 (1933).

Whether a business "regularly" engages in sales on the installment plan is a question of fact, and some of the factors looked into are the frequency of installment sales, the number of sales, and the general holding out to the public that sales would be made on the installment plan. *Marshall Brothers Lumber Co.*, 13 B. T. A. 1111 (1928), reversed and remanded pursuant to the stipulation of counsel without opinion, 51 F. 2d 1081 (C. A. 6, 1931). In the instant case, petitioner had at least 11 credit sales over about a 13-year period which would qualify as installment sales under applicable regulations. We have not included those sales which petitioner refinanced at its bank. See *Packard Cleveland Motor Co.*, 14 B. T. A. 118 (1928). While the frequency and number of sales are factors to be considered in deter- mining whether a dealer is entitled to report on the installment basis, each case must be determined in the light of its own facts. Petitioner manufactured and sold dehydration equipment ranging in price up to $90,000 depending on the size required. The selling price of the equipment sold during the year in question was about $49,000, and the profit on that one transaction was approximately $10,000. Under such circumstances, we are faced with an entirely different situation from one in which a dealer sells smaller items such as clothing, furni- ture, or appliances, and where the profit per unit is much smaller and many more units are sold over a given time. Petitioner's competi- tors sold dehydration equipment on credit, and in 1937 petitioner also began to sell such equipment on credit. Petitioner held itself out as willing to sell such equipment on a credit basis, and it was generally known throughout the trade that it would do so.

No evidence was introduced to show what percentage of petitioner's sale of dehydration equipment was made on a cash basis and what percentage on a credit basis. About eight per cent of petitioner's gross sales (including sales of dehydration and foundry equipment) was represented by the credit sale of the dehydration equipment for the taxable year in question. In *Marshall Brothers Lumber Co.*, *supra*, 14 to 17 per cent of its sales was on the installment basis. In that case, we said:

\* \* \* Counsel for respondent argues that because the cash sales amounted to five or six times as much as those on the credit or installment basis, it

could not be said petitioner was "regularly" selling on the installment plan. We do not believe, however, that the proportion existing between the different classes of sales is controlling. The question is, did the petitioner "regularly" sell on the installment plan basis? The fact that it also sold on the cash basis is only one element to be considered along with other circumstances * * *. [13 B. T. A. 1116]

It is unnecessary that books be kept on the installment basis to use that method for reporting income. It is sufficient if the books are kept so that adequate information is available to accurately compute income from the installment sales. *L. S. Weeks Co.*, 6 B. T. A. 300 (1927). In the instant case, petitioner's books and records were kept so that adequate information was available to accurately compute income from its sale of dehydration equipment for credit. It is immaterial that for years prior to 1944 petitioner reported such sales on the accrual basis. It is optional with the dealer who sells on the installment plan whether he wishes to report his income on the installment basis, and the fact that in prior years he did not elect to do so does not prevent him from using the installment basis for the taxable year. See *John Wanamaker Philadelphia, supra.*

Under such circumstances, petitioner "regularly" sold personal property on the installment plan, and respondent erred in denying petitioner the right to compute income from its sales of dehydration equipment for 1945 on the installment basis.

*Decision will be entered under Rule 50.*