## UNIVERSAL STEEL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4374.

Circuit Court of Appeals, Third Circuit.

Feb. 7, 1931.

Wm. A. Seifert, of Pittsburgh, Pa. (Smith, Shaw, McClay & Seifert, of Pittsburgh, Pa., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and Randolph C. Shaw, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and De Witt M. Evans, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

Petition to review an order of the United States Board of Tax Appeals adjudging a deficiency in the petitioner's income and profits taxes for 1919.

The Universal Steel Company, a manufacturer of steel plates and sheets for commercial use and armor plates for the government, made a tax return for the year 1918 in which it showed a closing inventory of two kinds of physical assets, materials owned and materials purchased, nominally priced at cost and aggregating $942,398.03. The petitioner used the same inventory as its opening inventory for the tax year 1919, as naturally it would do. It now says that inventory cost figures in both the 1918 and 1919 tax returns were understatements by $130,000 as indicated or proved by the cost figures of the same materials used in settling cancelled war contracts with the government. If that be true, the petitioner because of the understatement in its return for 1918 paid less income tax for that year than it should have paid, yet it now desires to augment its like understatement in its 1919 return in order to increase its invested capital and, correspondingly, decrease its tax for the latter year. If it should succeed, it would win both ways and the government would lose both ways. This is for the reason that the government is barred by the statute from re-determining the 1918 tax based in part on the alleged understated inventory.

In consequence of the bar as to the 1918 tax the petitioner maintains we are not concerned with the understatement in its return for that year and are not concerned with the incorrect tax assessed and paid under that return but should correct the same under-

statement in its 1919 return for invested capital purposes in the latter year. That may be harshly true, yet, if true, the petitioner must show it. United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Reinecke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385; Botany Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379. It endeavors to do so by saying, nine years after it filed its 1919 return, and by endeavoring to prove that it made a mistake in the inventory by placing too low a price on materials in the hands of sub-contractors and not fabricated into plate when the war ended. Yet as a matter of fact the alleged inventory mistake must have been known by the petitioner or some of its officials *before* it made its two tax returns containing the alleged mistake. This appears from the petitioner's own proposition of settlement, made to the government in February, 1919, as to tonnage and cost of the same materials left on hand under its cancelled war contracts. These contracts were adjusted and settled on the petitioner's high cost figures. All this goes to the merits of the case distinguished from its mathematics.

The trouble is the petitioner had three or, as it contends, four kinds of property in its inventory: (1) Armor plate produced entirely in its own plant; (2) plate rolled from ingots purchased from another concern; (3) plate finished rolled only from slabs which had been rolled by another concern out of ingots sold to the petitioner by still another concern; and (4) rough sheared plates purchased from yet another concern for fabrication into finished armor plate by subcontractors. The total of certain purchased materials amounted (in round figures) to 2,700,000 pounds at a cost of $1,016,000, which shows an average or unit cost of $0.3717 per pound; and it was so entered in the petitioner's 1919 income tax return. The weighted average unit cost of materials of "own manufacture and purchased mixed" was put at $0.2358 per pound. Thus, it will be observed, there were several kinds of material of different costs, manufactured or to be manufactured at different places: (1) The petitioner's own material and material purchased, to be manufactured or finished at its plant, and (2) purchased material to be manufactured or finished at plants of subcontractors. Purchased material was more costly than own manufactured material. The petitioner asserts that the unit price used in pricing its material in the inventory failed to take into account the fact that a certain part of the material was purchased.

The petitioner's own manufactured finished products were obtained through three manufacturing methods of which we speak only because of its concession that no record was kept to show what proportions of manufactured material in the inventory of December 31, 1918 was manufactured under each of these methods and that, likewise, no record was kept to show whether the particular physical units contained in the inventory of January 1, 1919, were from its own manufacture or from purchased products. Also, the inventory of materials on hand was of an intermingled mass of own manufactured and purchased materials. The Board found as a fact that, except for a small quantity capable of identification as purchased material, the remaining materials were at plants of sub-contractors where they had been so intermingled that it was not possible to identify what had been made in the petitioner's mills and what, if any, had been purchased from other concerns. In this state of intermingled properties of varying cost values the petitioner asserts that error in the inventory is due mainly to pricing quantities of 10-ton rough sheared plate and 5-ton rough sheared plate on hand at the plants of sub-contractors on December 31, 1918, at an average manufacturing cost of $0.2358 per pound, when, as it contends, these materials were purchased at an actual cost of $0.3081 and $0.3370 per pound, respectively. So the controversy, affecting a proper inventory and proper tax, as we view it, resolves itself into the quantity of purchased material on hand and particularly in the hands of sub-contractors at the time of the inventory. This quantity—an indispensable factor in calculating total costs and the correct tax—is not shown by the petitioner's books and not conclusively proved by direct evidence. It is therefore an uncertain factor in the tax computation which we are asked to determine by accepting the petitioner's mathematical formula of unit cost of production reckoned on certain known figures of production of other materials which the Board of Tax Appeals refused to adopt.

The Commissioner of Internal Revenue determined that the inventory which the petitioner had returned—indeed, had twice returned—was correctly valued both as to manufactured and purchased material. The prima facie correctness of that determination can be overthrown only by satisfactory proof of error and not by a mathematical calculation in which some of the essential factors are uncertain. Rather, it was the duty of the petitioner so to keep its books that these

items of manufactured and purchased materials and their costs could be determined when they were to be used in an inventory which, in turn, was to be used as one of the bases of taxation. It is clear that the petitioner did not do this but left the Board, and eventually this court, to work out a method or to adopt its own theory of proper inventory pricing in a highly complicated situation of intermingled materials of undetermined quantities. The Board of Tax Appeals held that the evidence was not sufficient for it to price the materials and held the petitioner to the prices in its income tax return. We cannot say it was wrong. Our only power and duty in this case, under authority of Bishoff v. Commissioner (C. C. A.) 27 F.(2d) 91, 92, is to determine, in point of law, whether there is enough evidence to sustain the Board's action. That, truly, is a matter of law within the meaning of the statute and we dispose of it by holding that there was enough evidence for the Board to sustain the Commissioner's determination of the tax deficiency.

The order is affirmed.