## NATIONAL MILL SUPPLY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4812.

Circuit Court of Appeals, Seventh Circuit.

Jan. 5, 1933.

Jacob S. Seidman, of New York City, for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and John D. Kiley, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for respondent.

Before ALSCHULER and EVANS, Circuit Judges, and WILKERSON, District Judge.

EVANS, Circuit Judge.

Petitioner, an Indiana corporation engaged in the wholesale and retail milling, plumbing, electrical, and automobile supply business, complains of the Board of Tax Appeals' determination of its 1923 income tax. Its criticism is directed to the Board's alleged erroneous inclusion of $90,000 in its income. It attributes the mistake to faulty bookkeeping by which an omission of $103,000 in inventory was concealed for seven years.

The facts: Petitioner offered testimony to the effect that in 1916 Lehman, its president and manager, instructed an accountant to open for it a new set of books and to set forth its inventory as of December 31, 1915, at $133,350.15. Petitioner asserts that this figure was $103,114.87 less than the actual inventory taken on that date; that the reduction was an arbitrary one and made because Lehman considered the prices of merchandise at the close of 1915, inflated. From 1915 to 1923 petitioner made no physical inventory but used what was called a perpetual inventory system with the $133,350.15 as its starting point. In 1923, however, it decided to take another physical inventory and to have its books audited at the close of the year. Appreciating that there would be a substantial discrepancy between the book inventory and the actual inventory, petitioner charged its merchandise account with $60,000 and credited "a special surplus account" with the same amount. On December 31, 1923, the physical inventory showed the merchandise account to be still $30,530.59 less than the new inventory. Petitioner thereupon made another entry charging the merchandise account with $30,530.59 and crediting "property and loss supplemental account" with the same amount.

Treasury Regulations 62, upon which both respondent and the Board of Tax Appeals rely, provides among other things as follows:

"Art. 1582. *Valuation of inventories.*— The Act provides two tests to which each inventory must conform: (1) It must conform as nearly as may be to the best accounting practice in the trade or business, and (2) it must clearly reflect the income. It follows, therefore, that inventory rules can not

be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order to clearly reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used is substantially in accord with these regulations. An inventory that can be used under the best accounting practice in a balance sheet showing the financial position of the taxpayer can, as a general rule, be regarded as clearly reflecting his income."

The effect of this regulation in cases where the facts were somewhat similar to those here presented has been the subject of judicial comment. In Lucas v. Kansas City Structural Steel Co., 281 U. S. 264, 269, 50 S. Ct. 263, 265, 74 L. Ed. 848, the court was considering the "base stock" method of inventory. The court said:

"But it is inconsistent with the annual accounting required by Congress for income tax purposes. It results in offsetting an inventory gain of one year against an inventory loss of another, obscures the true gain or loss of the tax year, and thus misrepresents the facts."

In Universal Steel Co. v. Commissioner (C. C. A.) 46 F.(2d) 908, 909, the court was considering the effect of a taxpayer's inventory which it had twice used in making its income tax returns. The court said:

"The Commissioner of Internal Revenue determined that the inventory which the petitioner had returned—indeed, had twice returned—was correctly valued both as to manufactured and purchased material. The prima facie correctness of that determination can be overthrown only by satisfactory proof of error and not by a mathematical calculation in which some of the essential factors are uncertain. Rather, it was the duty of the petitioner so to keep its books that these items of manufactured and purchased materials and their costs could be determined when they were to be used in an inventory which, in turn, was to be used as one of the bases of taxation."

The question before us then is this: Does the evidence tending to show that its reported January 1, 1923, inventory was erroneous so conclusively establish petitioner's contention as to justify our rejecting the finding of the Board which sustained the Commissioner's assessment which in turn was bas-

ed upon the inventories kept by petitioner and by it used and accepted both by the Government and petitioner for five years as the basis for determining its taxable gains and profits?

Our answer must be in the negative.

A few reasons for this conclusion are: (a) The physical property had been sold, and a check on any inventory of it, as of January 1, 1923, or December 31, 1923, is impossible. (b) Petitioner for five years used inventories based upon figures it now seeks to repudiate for the purpose of determining its income tax. (c) Its bookkeeping system in 1923 was also changed in respect to its losses attributable to bad accounts. This credit item increased in 1923 three or four times over previous years. (d) Petitioner in its return included as part of its taxable income, part of this difference ($30,530.59), which it now asserts was chargeable to capital.

The order of the Board of Tax Appeals is affirmed.