## Steel or Bronze Piston Ring Corporation, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 16271.   Promulgated October 24, 1949.

*Albert Stump, Esq.,* for the petitioner.
*Lester M. Ponder, Esq.,* for the respondent.

638

OPINION.

LeMire, *Judge*: (1) *Relief under section 721.*—It is petitioner's contention that all of its 1942 and 1943 income resulted from research and development of tangible property, patents, formulae, and processes extending over the period beginning not later than 1929 and ending about 1936 or 1937, and was therefore·abnormal income within the meaning of section 721 (a) (1) and of the class described in subsection (a) (2) (C).

In our opinion the evidence fails to support this contention. From its inception the petitioner, largely through its president, conducted a certain amount of research and experimentation in piston ring manufacturing for commercial use. In so doing it merely continued the business which had been operated for a number of years by its predecessors. At the time petitioner came into existence the business was well established. This is shown by the fact that the petitioner in 1930, the first full year of its operations, had the largest volume of business of any year prior to 1941. Its sales in that year amounted to over $23,000, while for some of the several years next succeeding they fell off to approximately one-third that amount. Sales rose spectacularly from $11,000, using round figures, in 1940 to $45,000 in 1941, $129,000 in 1942, and $212,000 in 1943. Undoubtedly, the petitioner had done much in the meantime to improve its production and its manufacturing processes, but it was in no sense pioneering in a new field and its large volume of business in the taxable years was not due to the use of any patents, exclusive rights, or special manufacturing technique which it had developed. Rather, we think, it was due to the increased demand for piston rings of all types as a result of the war.

The petitioner would have us believe that it struggled along with its efforts to develop a satisfactory method of manufacturing piston rings of steel, bronze, and alloys, as distinguished from cast iron, from its organization in 1929 until about 1936 or 1937, when its problems all became solved and it arrived at a point where it could enjoy

the fruits of its years of research and experimentation. This, however, was not the situation. The petitioner did not gain the use of any manufacturing patent or discovery in 1938, or any other year, to which it could attribute its large volume of business in 1942 and 1943. Its progress in improving its products and developing satisfactory manufacturing methods was slow and gradual. There is nothing in the evidence to support the claim that in the absence of the war-stimulated increase in the demand for piston rings the petitioner would have met with any materially greater success in 1941, 1942, and 1943 than it had enjoyed in prior years.

The Commissioner's regulations provide that abnormal income resulting from increased sales due to increased demand for the taxpayer's products may not be attributable to prior years. Sec. 35.721-3, Regulations 112. We said in *Soabar Co.*, 7 T. C. 89, that this provision of the regulation carries out the intent of Congress and is in harmony with the spirit and purpose as well as the word of the law.

We have purposely omitted from our findings of fact many of the facts requested by the petitioner because we regard them as merely cumulative or wholly immaterial. Even if it be granted that some portion of petitioner's income for the taxable years 1942 and 1943 resulted from improvement of its production and the development of formulae and manufacturing processes over the prior years by the petitioner as well as its predecessors, it is obvious, however, that not all of its income for 1942 and 1943 may be attributable to those sources. Undoubtedly, some of it was attributable to good management and sound manufacturing practices. The burden rests upon the petitioner to show abnormality of income attributable to prior years. Cf. *Pantasote Leather Co.*, 12 T. C. 635. Petitioner has not borne this burden.

In the view that we take of the question, it is not necessary here to discuss the failure of the proof in other respects, such as the absence of competent figures upon which to compute the statutory "net abnormal income" for either of the taxable years or the base period years. Cf. *Soabar Co.*, *supra*, and *Eitel-McCullough, Inc.*, 9 T. C. 1132. The absence of proof as to what portion of petitioner's income for the taxable years was abnormal income within the meaning of the statute is fatal to its claim for relief under section 721. The facts here, unlike those in *Ramsey Accessories Mfg. Corporation*, 10 T. C. 482, afford no basis upon which we could make any independent allocation of net abnormal income to prior years or any determination of net abnormal income for any of the years involved.

(2) *Invested capital.*—In his notice of deficiency the Commissioner reduced petitioner's invested capital, as reported in its returns, from $72,692.58 to $48,506.10 for 1942 and from $85,962.88 to $48,276.95 for 1943. The petitioner alleges that the Commissioner erred in so

doing. In its brief, however, it makes no argument on this issue. It states that petitioner's books do not properly reflect its invested capital and refers to certain numbered paragraphs of its requested findings, 4, 11, and 25, which are said to offer a basis for the computation of the correct invested capital.

Number 4 of the requested findings sets forth that, as stipulated, petitioner's predecessor, Garsix, was capitalized at $50,000.

Number 11 relates to the stipulated fact that George D. Gardner in his receivership action against Garsix stated in his petition that Garsix was indebted to him for moneys advanced to it in the amount of $40,000.

Number 25 relates to the advances which, according to testimony adduced at the trial, were made to the petitioner by both the wife and the sister of George Deeb, the petitioner's president.

We have found on the uncontroverted evidence that these advances amounted to from $18,000 to $25,000 by the wife and some lesser, undetermined amount by the sister. However, we have not found, and the evidence does not show, whether these amounts were advanced as loans or gifts to the petitioner or to George Deeb, personally; whether they were represented by notes; whether they were ever repaid by the petitioner or George Deeb; or whether they were intended as contributions of capital. Deeb's wife was the principal stockholder of petitioner, while his sister owned none of its shares.

To be includible in equity invested capital under section 718, Internal Revenue Code, the advances, even if we could determine the exact amount, must have been paid in for stock or as paid-in surplus, or as contributions to capital. To be includible as borrowed capital under section 719 they must have been "evidenced by a bond, note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust."

On the evidence before us we can make no determination that any of the amounts claimed came within the requirements of the statute. We therefore find no error in the respondent's determination of petitioner's invested capital.

(3) *Excess profits credit carry-over.*—The petitioner claims an increase in its unused excess profits credit carry-over based upon whatever increase is allowed in its invested capital. Since we have found that on the evidence of record the petitioner is not entitled to any increase in its invested capital, it follows that no adjustment is to be made in its unused excess profits credit carry-over.

(4) *Inventories.*—The petitioner admits that the inventories as reported in its returns were incorrect. It contends, however, that the adjustments made in the notice of deficiency were also erroneous. What the Commissioner did was to adjust the opening inventory of each taxable year to the amount reported in petitioner's returns as the

closing inventory of the previous year. This adjustment was, of course, proper, provided the closing inventories were correctly reported. In any event, consistency requires that the opening inventory of each year correspond to the closing inventory of the preceding year.

The petitioner now contends that the inventories as reconstructed by the accountants which it engaged for that purpose should be substituted for those used by the Commissioner.

We may assume that the accountants made an honest effort to establish impartial inventories and that their calculations were based on the best records available to them in petitioner's books. The fact remains, however, that their computation is at best an estimate. It represents an effort on the part of the accountants to supply by theoretical calculations the vital factors which are lacking in petitioner's records. If, as petitioner admits, records are lacking on which correct inventories could now be established, the fault lies with the petitioner, and the hardship is of its own making. To meet the burden of overcoming the prima facie correctness of the Commissioner's determination the petitioner is required to do more than come forward with the best evidence available. It must submit evidence that shows the Commissioner's determination to be in error. In this, we think, the petitioner has failed.

(5) *Traveling, entertainment, and general expenses.*—In this issue the evidence, again, is wholly lacking to show that the Commissioner erred in disallowing a portion of the deductions claimed by the petitioner for travel, entertainment, and general expenses. The petitioner admittedly kept no records of the amounts actually spent for traveling and entertainment. Apparently, the amounts claimed in each year represented the total of the amounts which George Deeb estimated would be needed and which he withdrew for the various trips that he made. We do not know how many trips were made or to what places. He testified that he spent some of the funds for tools and equipment. These may all have been capital expenditures. At any rate, they were not deductible as travel expenses.

It seems to us that in the light of the evidence the Commissioner's allowance of more than one-half of the $4,205 claimed as a deduction in 1942 and the $5,130.36 claimed in 1943 was generous.

There is no evidence on which we can make any ruling as to the deductibility of the items claimed as payments made to the Hoosier Motor Club and the Tarkington Aviation Corporation or as to the "unsubstantiated disbursements of cash." The respondent's disallowance of these items is therefore sustained.

(6). *Salary of George Deeb, Jr.*—The petitioner claimed a deduction of $5,000 in 1943 for salary paid to George Deeb, Jr. The Commissioner allowed $1,000 and disallowed $4,000 of that amount.

George Deeb, Jr., was neither an officer nor a regular employee of the petitioner in 1943. He was employed by an accounting firm in Indianapolis, Indiana, for the first three or four months of that year and served in the armed forces as an aviation cadet for the remainder of the year. The contention is made that while he was serving as an aviation cadet he rendered valuable services to the petitioner by studying the use of piston rings in airplane motors and landing gears, advising the petitioner of needed improvements, and aiding petitioner in making contacts with potential customers.

The record completely fails to support this contention. It is our opinion that any services that George Deeb, Jr., rendered the petitioner in 1943 were only remotely related to the petitioner's business and were of no more than nominal value. Again, we think, the Commissioner was liberal in his allowance of $1,000 of the $5,000 claimed.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*