Kenneth B. Kaar and Bertha A. Kaar v. Commissioner.
Kaar v. Commissioner
Docket No. 53590.
United States Tax Court
T.C. Memo 1957-81; 1957 Tax Ct. Memo LEXIS 170; 16 T.C.M. (CCH) 355; T.C.M. (RIA) 57081; May 22, 1957
*170 Held: The method of evaluating inventory employed by the petitioner was arbitrary and the adjustments thereto by the respondent are sustained. Held, further: The petitioner, as a guarantor, did not sustain a bad debt loss in 1949 upon the default of the principal debtors and the repossession of the property securing the debt. Joseph J. Cariotto, Esq., Federal Securities Building, Lincoln, Neb., for the petitioners. Emory L. Langdon, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined a deficiency in income tax against Kenneth B. Kaar and Bertha A. Kaar for the taxable year 1948 in the amount of $20,922.52. Numerous adjustments set out in the deficiency notice were not put in issue by the petitioners. The adjustments which were contested by the petitioners, and constitute the issues in this case, are (1) whether the petitioners correctly valued their parts inventory on December 31, 1947, 1948, and 1949; and (2) whether the petitioners sustained an operating loss in 1949, attributable to the repossession of trucks and trailers, which loss should be carried back to 1947 and forward to 1948. Findings of Fact Some of *171 the facts have been stipulated and are found accordingly. Petitioners are husband and wife who reside in Lincoln, Nebraska. For the taxable year 1947, they filed separate income tax returns with the then collector of internal revenue at Omaha, Nebraska. For the taxable years 1948 and 1949 they filed joint income tax returns with the same office. Kenneth B. Kaar, who will hereinafter be referred to as the petitioner, was in the garage business during 1947, 1948 and 1949, engaged in general repair of vehicles. During these years he also made sales of trucks and trailers, having the agencies for G.M.C. trucks and Spencer trailers. Petitioner's books were kept on an accrual basis and inventories were used in computing net profit reported on his income tax return. A physical inventory of parts was taken by an employee of petitioner, Carroll Durst, at the end of 1947, 1948, and 1949. Upon completion of the physical inventory, the inventory sheets were turned over to the bookkeeper, Bertha A. Kaar, where total inventory values were entered. Durst did not assist in the preparation of petitioner's income tax returns and does not know what amounts were listed as inventory on these returns. *172 The working papers of petitioner's accountant reflect the following computation by which physical inventories were adjusted to compute the figures used as closing inventories in computing 1948 and 1949 income per return: Valuation of Parts Inventory
Parts - Physical Inventory 12-31-48 at present cost price
$59,700.73
Less - Estimate for Obsolete Parts
12,000.00
Balance
$47,700.73
Valued as follows: 1/3 at today's price
$15,900.24
2/3 Estimated as purchased at 58% of today's price
18,444.28
$34,344.52
Parts - Physical Inventory 12-31-49 at present cost price
$52,675.45
Less - Estimate for Obsolete Parts
12,000.00
Balance
$40,675.45
Valued as follows: 1/2 at today's price
$20,337.72
1/2 Estimated as purchased at 58% of today's price
11,795.88
$32,133.60 The petitioner's returns for the years 1947, 1948 and 1949 do not include the figures used for parts inventory as separate figures but the adjustments for inventories are included on the 1947 and 1948 returns in the amount assigned to "Merchandise bought for sale" and in the amount for the "Net cost of goods sold" on the 1949 return. Respondent determined that these adjustments to inventories were arbitrary, because of which the inventories were understated *173 as of December 31, 1948 and 1949 by $25,356.21 and $20,541.85, respectively. Petitioner sold numerous trucks and trailers in 1948 and 1949 under a "floor plan" whereby Yellow Manufacturing Acceptance Corporation, hereinafter referred to as YMAC, financed the purchases and was the owner of the conditional sales contracts. Some of the purchasers defaulted on payments and 11 trucks and 10 trailers were repossessed in 1949 by an employee of YMAC. Petitioner had guaranteed the notes of the purchasers under the conditional sales contracts. The following is a list of trucks and trailers, sometimes hereinafter referred to as vehicles, by number, selling price, unpaid balance on repossession, and amount at which each was entered on petitioner's books at date of repossession: Trucks
Amount
Unpaid
at Which
Balance
Each Unit
Selling
Due
Was Entered
Price
on Date
on Petitioner's
as Listed
of Repos-
Books at Date
No.
on Books
session
of Repossession
929
$11,329.35
$6,552.79
* *174 827
5,261.80
3,137.52
*
815
9,600.00
5,724.45
$5,856.14
817
5,312.36
1,449.78
1,481.86
807
5,422.04
4,402.75
4,503.30
819
12,811.00
5,623.31
*
733
6,774.41
5,416.45
5,532.96
803
5,383.70
3,421.50
3,500.00
509
3,000.00
2,690.43
2,750.64
813
3,978.52
2,219.43
2,269.64
921
8,250.57
7,544.88
7,709.72
Trailers
830
6,625.00
3,314.40
*
928
6,355.00
2,917.21
*
702
3,472.00
1,644.60
1,563.41
906
7,371.75
5,209.06
5,441.69
816
5,383.80
2,956.09
3,014.22
814
3,215.00
3,084.72
3,132.68
708
6,515.00
3,558.74
3,636.09
712
4,450.00
2,782.62
2,848.13
910
7,206.00
4,885.00
5,000.00
918
6,537.00
5,745.35
5,878.75
After the vehicles were repossessed, the petitioner entered into a contract with Denver Fast Freight, whereby the repossessed vehicles were used by the petitioner in the trucking business. The net proceeds in some indeterminate amount, from the business in which petitioner used the vehicles, were turned over to YMAC to further reduce the unpaid balance due thereon. Petitioner's 1951 income tax return reveals that for the purposes of taking depreciation on 10 of the 11 repossessed trucks and all of the trailers, the petitioner used as "cost" of each unit, with minor exceptions, the same amounts assigned to each unit as unpaid balance due by purchaser at date of repossession. Petitioner also reported the sale of nine of the ten trailers in 1951 at an average of approximately $1,500 each. For the purpose of determining gain or loss upon the sale, the cost assigned to each unit was the same as the unpaid balance due at the date of repossession, and depreciation was taken on that cost basis. Petitioner did not claim any losses or deductions on his 1949 income tax return attributable to repossession of trucks and trailers. Petitioner now contends that he is *175 entitled to a deduction for such a loss. Petitioner did not sustain a deductible loss or a bad debt loss in any amount by reason of the repossession of certain trucks or equipment during the calendar year 1949. Opinion The first issue is whether the petitioner correctly valued his parts inventory on December 31, 1947, 1948 and 1949 in accordance with section 22(c), Internal Revenue Code of 1939. The petitioner did not present any evidence regarding the value of the opening and closing parts inventories for 1947 and has apparently abandoned his contention on this issue for that year. The respondent's determination of inventory being prima facie correct, it is incumbent upon petitioner to submit satisfactory evidence that the determination is incorrect if he is to prevail. National Mill Supply Co., 23 B.T.A. 1363, affd. 62 Fed. (2d) 420. As to the ending inventories for 1948 and 1949, we find that the petitioner has not submitted such evidence and therefore has not sustained his burden of proof. Section 22(c) of the Internal Revenue Code of 1939 provides that "* * * inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, *176 may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income." Regulations 111, Sec. 29.22(c)-2 provide that the inventories should be recorded in a legible manner and should be preserved as part of the accounting records of the taxpayer. Regulations 111, Sec. 29.22(c)-2 also provide that "The bases of valuation most commonly used by business concerns and which meet the requirements of section 22(c) are (a) cost and (b) cost or market, whichever is lower." It is further provided that the following method is not in accord with these regulations: "(1) Deducting from the inventory a reserve for price changes, or an estimated depreciation in the value thereof." Now let us examine just what the petitioner did. One of petitioner's employees took physical inventories for the years 1948 and 1949 and a "present cost price" was assigned to the total inventory. There were no inventory records produced in evidence but the working papers of petitioner's accountant show the "present cost price" as assigned to the total inventories. The petitioner then reduced these aggregate figures by an estimate for general obsolescence *177 of parts and by an additional amount computed by a mathematical formula. The deduction for obsolete parts is apparently an attempt to eliminate older items in inventory to bring it up to date, and the reduction by the formula assumes that most of the stock consisted of older parts and were purchased at a lower cost. It is apparent to us that petitioner is not using the cost or the cost or market method of evaluating inventory but a combination of deductions for his own benefit. See O. A. Steiner Tire Co., 9 B.T.A. 1289. If the petitioner is attempting to price his inventory at some value less than cost, which he is apparently attempting to do, he must establish his adjustments by detailed proof. Deline Manufacturing Co., 6 B.T.A. 711. The only proof we have that "present cost price" of inventory, which respondent contends is the correct inventory evaluation, is incorrect, is vague testimony of certain general adjustments made which even petitioner's accountant admitted were incorrect. "If, as petitioner admits, records are lacking on which correct inventories could now be established, the fault lies with the petitioner, and the hardship is of its own making. * * *" Steel or Bronze Piston Ring Corporation, 13 T.C. 636. *178 See also John Wanamaker, Philadelphia, 22 B.T.A. 487, 501, affd. 62 Fed. (2d) 401, certiorari denied 289 U.S. 738. We do not think that the evidence of inventory evaluation presented by petitioner is of the probative value necessary to overturn the respondent's determination. The second issue is whether the petitioner sustained a loss in 1949 attributable to repossession of certain trucks and trailers. The petitioner did not claim any repossession losses on his 1949 income tax return but makes the allegation for the first time in his petition. The burden is on petitioner to show that he is entitled to such a deduction. The facts as to this issue are somewhat vague in some respects. It fairly appears YMAC put up the money for the trucks and trailers when they were purchased by petitioner under a "floor plan" arrangement which provided that when petitioner sold the trucks and trailers upon conditional sales contracts the notes and contracts would be turned over to YMAC. These notes were guaranteed by petitioner and in the event of default by the purchaser, YMAC had recourse against petitioner. Upon default by the purchasers, certain of the vehicles were repossessed in 1949. Petitioner *179 contends that when the vehicles were repossessed he signed some "papers" which, he was later advised by some unknown person, released the purchasers from further liability on their notes. This, petitioner contends, resulted in making the petitioner absolutely liable to YMAC for the full unpaid balance due on the vehicles. It was not disclosed in the petition or at the trial what theory petitioner is using to claim this loss. If a deductible loss was sustained as a result of the above facts, it must arise from bad debts which were uncollectible from the purchasers under section 23(k) of the Internal Revenue Code of 1939. See Putnam v. Commissioner, 352 U.S. 82, where it was held: "* * * the loss sustained by the guarantor unable to recover from the debtor is by its very nature a loss from the worthlessness of a debt." A debt could have come into existence as between the purchasers, who were the principal debtors, and the petitioner only by virtue of the petitioner's status as guarantor to the principal debtor's notes. In Putnam v. Commissioner, supra, the rule as to when and how such a debt arises is stated as follows: "The familiar rule is that, instanter upon the payment [italics *180 supplied] by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor, not a new debt, but, by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditor's shoes. * * *" There is no evidence in the instant case, nor is it argued, that the petitioner paid any amount to the YMAC by cash or by notes because of his guaranty in the taxable year. We held in J. P. Badenhausen, 7 B.T.A. 910, that a debt never came into existence as between the guarantor and the principal debtor, even though the taxpayer was an accrual basis taxpayer, when it did not appear he had paid any amount to the principal creditor. Assuming, arguendo, that a debt in some amount could have arisen between the purchasers and the petitioner without the necessity of actual payment by petitioner to YMAC, we still feel that petitioner has failed to prove a deductible bad debt loss from the transactions herein involved in 1949. The amount of a guarantor's liability to a creditor is determined by the debtor's liability to the creditor. Where property, sold on conditional sales contracts, is repossessed because of *181 default in payments, the market value of such property on the date of repossession must be subtracted from the unpaid balance due thereon before it can be determined what amount, if any, the purchasers owe, and consequently, what amount, if any, the guarantor must pay. The difference in the above amounts, could, under proper circumstances, qualify as a bad debt deduction. Commissioner v. Spreckels, 120 Fed. (2d) 517. If the market value of the property repossessed is equal to the unpaid balance, the purchasers would owe nothing to the seller, and the guarantor would be released. The evidence as to value of the vehicles on repossession, upon which the petitioner relies, is the very general testimony of the petitioner himself, an agent of YMAC, and Guy E. Coons, upon whose land the vehicles were parked following repossession. Their testimony was very general concerning the condition of the vehicles and the market value thereof. The testimony was that the trucks and trailers (21 units) only had junk value, or about $500 each. In the petition, it was pleaded that they were of the value of $42,150. At another place in his argument here, petitioner argues they were of the value of $18,600. *182 The strongest evidence against petitioner's contention is the documentary evidence of his own books where he carried them at the value of the unpaid balance at the time of repossession. Then, too, he used the trucks in order to enter the trucking business and used the value on his books in order to figure depreciation. So, too, did he use the unpaid balance at the time of repossession as the value of the vehicles in figuring his loss when he ultimately sold the vehicles. We are also at a loss to know exactly how much he owed YMAC. He testified some money was paid over to YMAC from the trucking operations, during the year and a half he operated the vehicles. In this state of the record we can only hold petitioner has failed in his burden of proof to show he suffered a deductible loss in the year 1949. Achilles H. Kohn, 16 T.C. 960, affd. 197 Fed. (2d) 480. Decision will be entered for the respondent. Footnotes
*. These amounts have not been verified.