ESTATE OF ALBERT COHN, DECEASED, ADELINE G. COHN, JANE LEE RODMAN, AND HAROLD I. RODMAN, EXECUTORS, AND ADELINE G. COHN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2299–71.  Filed March 25, 1974.

*William A. Hylton, Jr.,* and *Eugene H. Schreiber,* for the petitioners.

*Thomas C. Morrison,* for the respondent.

WITHEY, *Judge:* Respondent determined deficiencies in Federal income taxes against the petitioners for the taxable years 1966 and 1968, as follows:

| Year | Deficiency |
|---|---|
| 1966 | $78, 478. 08 |
| 1968 | 199, 441. 35 |

The sole issue presented for our consideration is whether the petitioners are entitled to change inventories which were previously reported by National Rubber Footwear Co., a sole proprietorship, during the years 1964 through 1968, inclusive, or whether they are required to report National's beginning 1968 inventory in the same amount as National's originally reported ending 1967 inventory in

788

order to properly report their income for the taxable years 1966 and 1968 involved herein.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Albert Cohn (hereinafter referred to as Albert) died on July 18, 1968.

Petitioners Adeline G. Cohn, Jane Lee Rodman, and Harold I. Rodman are the duly appointed executors of Albert's estate.

Petitioners, during the taxable years 1966 and 1968, and at the time of the filing of their petition herein, resided in Baltimore, Md. A U.S. fiduciary income tax return (Form 1041) was timely filed for the period August 1, 1968, to December 31, 1968, by the petitioners with the district director of internal revenue at Baltimore, Md.

Petitioner Adeline G. Cohn (hereinafter referred to as Adeline) was legally married to Albert from June 29, 1930, until the date of his death. Petitioner, during the taxable years 1966 and 1968 and at the time of the filing of the petition herein, resided in Baltimore, **Md.**

For many years prior to his death, Albert owned and operated National Rubber Footwear Co., and/or National Rubber Products Co. (hereinafter referred to as National) in Baltimore, Md., as a sole proprietorship. National was a wholesaler and distributor of tennis shoes and rubber boots, uniquely involved with the handling of "seconds."

Shortly after his employment by National in 1953 and up to and including the date of the instant proceeding, Leon Levy (hereinafter called Levy) worked for National as manager under Albert's supervision and close direction.

During his life, Albert was responsible for negotiating the prices of merchandise bought and sold.

Levy was familiar with the prices that Albert received for merchandise and with the prices that he paid for merchandise.

After Albert's death, Levy continued to manage the business and made only slight changes in the prices charged or paid for merchandise.

Prior to Albert's death, Albert priced the inventories which were counted by Levy, but Levy never saw the final outcome of Albert's computations, the resulting profit-and-loss statements, or the resulting balance sheets.

Since 1954, Nathan Smith (hereinafter referred to as Smith), was engaged as Albert's certified public accountant (CPA), and did periodic auditing of National's books, and prepared the requisite financial statements which included profit-and-loss statements and balance sheets.

In preparing National's financial statements, Smith relied upon Albert's inventory computations.

Smith also prepared the following United States income tax returns:

| | |
|---|---|
| Albert's and Adeline's joint return for 1964__ | 1964 return |
| Albert's and Adeline's joint return for 1965__ | 1965 return |
| Albert's and Adeline's joint return for 1966__ | 1966 return |
| Albert's and Adeline's joint return for 1967__ | 1967 return |
| Albert's and Adeline's joint return for 1968__ | 1968 return [1] |
| Albert's and Adeline's amended return for 1966 _____ | 1966 amended return |
| Albert's and Adeline's amended return for 1967 _____ | 1967 amended return |
| Albert Estate's fiduciary return for 1968____ | 1968 fiduciary return [1] |

[1] The purported profit from National's 1968 operations was reported on the 1968 return for the period beginning Jan. 1, 1968, through and including July 31, 1968, and was reported on the 1968 fiduciary return for the period beginning Aug. 1, 1968, through and including Dec. 31, 1968.

The original tax returns filed before Albert's death for the years 1964 through 1967 reported cost of goods sold as follows:

| | 1964 | 1965 | 1966 | 1967 |
|---|---|---|---|---|
| Beginning inventory_____ | $110,405.25 | $128,460.15 | $84,325.80 | $97,416.20 |
| Purchases, etc_____ | 458,484.52 | 331,581.57 | 586,591.39 | 713,472.33 |
| | 568,889.77 | 460,041.72 | 670,917.19 | 810,888.53 |
| Less: Ending inventory_____ | 128,460.15 | 84,325.80 | 97,416.20 | 148,287.25 |
| Cost of goods sold_____ | 440,429.62 | 375,715.92 | 573,500.99 | 662,601.28 |

In order to prepare the 1968 fiduciary return and the individual joint 1968 return, Levy took a physical count of National's ending inventory on December 31, 1968. The physical inventory resulted in a gross profit of 63 percent, a substantially larger gross profit for National's 1968 operations than was reported during prior years.

Because of the disparity in the gross-profit percentage for National's 1968 operations, Smith concluded that the figures must be in error and therefore consulted with Eugene H. Schreiber, an attorney and CPA specializing in the matters of taxation. Smith and Schreiber, petitioners' personal representatives, decided that the earlier returns were incorrect, and that it was necessary to arrive at proper figures for the gross-profit percentages and inventories. They attempted to determine whether there were comparable businesses which could be used as a guideline, but were unable to locate any such businesses. They then tried to devise a way of determining accurate figures, but eventually came to the conclusion that in the absence of records the only

way to reconstruct the figures would be to develop a gross-profit percentage for a period of years in order to minimize fluctuations, and apply this percentage to 1968 and all preceding open years.

Schreiber determined that a 5-year period was the minimum period for accurately developing the gross-profit percentage. Smith and Schreiber developed composite figures for a 5-year period beginning January 1, 1964, and ending December 31, 1968, and after arriving at the gross-profit percentage of 31.35 percent for that 5-year period, developed opening and closing inventories (and hence income) for each year of the 5-year period.

Gross-profit percentages in the years 1964 through 1967 were originally reported as follows:

|  | 1964 | 1965 | 1966 | 1967 |
|---|---|---|---|---|
| Net sales | $538,198.41 | $482,686.74 | $718,968.02 | $857,215.70 |
| Cost of goods sold | $440,429.62 | $375,715.92 | $573,500.99 | $662,601.28 |
| Gross-profit percent | 18.2 | 22.2 | 20.2 | 22.7 |

Had National's beginning inventory for 1968 been reported on the 1968 return in the same amount as shown as the originally reported 1967 ending inventory, National's gross-profit percentage for 1968 would have been as follows:

|  | 1/1/68 to 12/31/68 |
|---|---|
| Net sales | $843,557.39 |
| Cost of goods sold | $311,792.41 |
| Gross-profit, percent | 63.0 |

The originally reported inventories and amended inventories for the 5-year period chosen by petitioners' personal representatives are as follows:

| Period | Originally reported inventories | Amended inventories |
|---|---|---|
| Ending 1963 (begin 1964) | $110,405.25 | Not applicable |
| Ending 1964 | 128,460.15 | Not applicable |
| Ending 1965 (begin 1966) | 84,325.80 | $197,607.59 |
| Ending 1966 | 97,416.20 | 290,620.24 |
| Ending 1967 | 148,287.25 | 415,605.42 |
| Ending 1968 | 229,279.94 | 229,279.94 |

Tax returns were then prepared and filed for the year 1968 on this basis and amended returns were also prepared and filed for the years 1966 and 1967 (the only open years) on the same basis. No amended returns were filed for 1964 or 1965, which were closed years.

The 1968 return and the 1968 fiduciary return did not report Na-

tional's originally reported 1967 ending inventory as the 1968 beginning inventory, but rather reported the 1967 amended return ending inventory as the 1968 beginning inventory. The beginning and ending inventories were revised for 1966 and 1967, and reported on the 1966 amended return, the 1967 amended return, the 1968 return, and the 1968 fiduciary return to show the uniform gross-profit percentage from 1966 through 1968 as follows:

| | Amended 1966 | Amended 1967 | 1/1 to 7/31/68 | 8/1 to 12/31/68 |
|---|---|---|---|---|
| Net sales | $718,968.02 | $857,215.70 | $641,296.82 | $202,260.57 |
| Cost of goods sold | $493,578.74 | $588,487.15 | $440,256.68 | $138,853.90 |
| Gross-profit percent | 31.35 | 31.35 | 31.35 | 31.35 |

The gross-profit percentage of 31.35 was determined by averaging National's gross profits for the years 1964 through and including 1968.

The 1966 amended return, the 1967 amended return, the 1968 return, and the 1968 fiduciary return were filed on August 15, 1969.

Albert's personal representative, Nathan Smith, and Adeline filed the 1966 and 1967 amended returns which changed, inter alia, reported inventories with respect to National's operations. In applying the gross-profit percentage in redetermining National's inventories for 1966 through 1968, an increase was made in National's beginning 1966 inventory. No change was made with respect to the ending 1965 inventory to reflect the increase in beginning inventory for 1966.

At the time the 1968 returns were prepared, Albert's CPA, Smith, was aware that the existing gross profit from National's operations would have approximated 63 percent without inconsistently changing the beginning 1968 inventory to an amount other than the previously reported ending 1967 inventory. Likewise, Schreiber was aware of the high percentage of income resulting in 1968.

Respondent's statutory notices of deficiency for the taxable years 1966 and 1968 make the following adjustments:

a. Changes the reported beginning 1968 inventory from the ending 1967 inventory as shown on the 1967 amended return to the originally reported ending 1967 inventory, and alternatively

b. Restores the revised beginning 1966 inventory to the originally reported beginning 1966 inventory.

It is stipulated that in the event respondent's adjustment to the beginning 1968 inventory is determined correct, then the originally reported inventories for 1966 and 1967 will not be controverted. Accordingly, under such circumstances, petitioners will be entitled to claims for refund to the extent the amended returns in question show tax liabilities in excess of the amounts originally reported. For this

purpose, petitioners have filed timely claims for refund for 1966 and 1967 to restore the tax liabilities for 1966 and 1967 to the amounts originally reported.

There is no dispute as to the amount of the inventories reported for January 1, 1964, and December 31, 1968.

OPINION

In computing the taxable income of the petitioners for the taxable year 1966, the respondent determined that the opening inventory for that year was $84,325.80, rather than the $197,607.59, as claimed on the amended income tax return filed by petitioners for 1966. Also, in computing petitioners' taxable income for the taxable year ending December 31, 1968, the respondent determined that the opening inventory for that year was $148,287.25 (the amount shown as the closing inventory on the original return filed by Albert and Adeline Cohn for the taxable year ending December 31, 1967), rather than $415,-605.42, as claimed on their income tax return for December 31, 1968, and as shown on their amended return for the taxable year 1967. In effect, respondent corrected petitioners' reported income by changing the reported 1968 inventory to the originally reported ending 1967 inventory; and by restoring the amended beginning 1966 inventory to the originally reported 1966 inventory. Respondent does not dispute petitioners' previously reported inventories but seeks only to tax the resulting 1968 profit. Essentially, it is respondent's position that solely because National had the good fortune to experience a favorable gross-profit margin for 1968 in the amount of 63 percent,[2] petitioners' representatives (Smith and Schreiber) could not arbitrarily offset the income disparity resulting from prior years by changing National's previously reported inventories to reflect an average 5-year profit ratio of 31.35 percent. Respondent argues that by changing the inventories involved petitioners seek to avoid the tax consequence relating to their profits in 1968 by shifting a substantial portion thereof ($113,281.79) into closed years, 1964 and 1965.

Petitioners, in opposition, contend that National was a stable business which did not experience severe fluctuations in prices either charged to the company or charged by the company; that there was only a slight change in pricing or purchasing policies and no change of petitioners' business conditions in general after Albert's demise; and that it was inconceivable that the gross profit could jump to 63 percent during the taxable year 1968. In the same vein, petitioners argue that since this percentage was "completely outlandish," in comparison

_____

[2] National's gross profit percentages for the 4 preceding years range from 18.2 percent in 1964 to 22.7 percent in 1967.

to gross profits in prior years, it was necessary for petitioners' representatives to develop a proper figure for the gross percentage of profit and inventories in order to minimize the fluctuations, and apply this percentage to 1968 and all preceding open years.[3]

The respondent's determination of inventory being prima facie correct, it is incumbent upon petitioners to submit satisfactory evidence that the determination is incorrect if they are to prevail; and this cannot be accomplished by a mathematical calculation in which some of the essential factors are uncertain. *National Mill Supply Co.* v. *Commissioner*, 62 F.2d 420 (C.A. 7, 1933), affirming 23 B.T.A. 1363 (1931).

Section 471 of the Internal Revenue Code of 1954 requires inventories to be taken "on such basis as the Secretary or his delegate may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and *as most clearly reflecting the income.*" (Emphasis added.) Section 1.471–2(b), Income Tax Regs., appropriately prescribes:

*In order clearly to reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation* so long as the method or basis used is substantially in accord with §§ 1.471–1 through 1.471–9. * * * [Emphasis added.]

In our view petitioners' method of inventorying based upon an average gross profit over a period of 5 years does not clearly reflect National's income during the taxable years involved, within the intendment of section 471, *supra*. In the absence of any affirmative evidence to the contrary, National's 1968 cost of goods sold should have been calculated by petitioners with reference to National's previously reported 1967 inventory. The nonexistence of a similar business (which dealt in tennis shoes and rubber boots of "second" grade) in order to weigh the reasonableness (or unreasonableness) of National's 1968 profit ratio against a comparable enterprise, and petitioner's consequent reliance upon the aforementioned 5-year profit average of 31.35 percent, which he considered a minimum period to reasonably ascertain a ratio, does not validate the technique employed by petitioners to alter the inventories reported in prior years. Notably, 2 low income years, 1964 and 1965, used in determining the 5-year average, were closed for tax purposes. Therefore, petitioners' inventory changes were confined to the open years 1966 through 1968, and no inventory changes were made either to 1964 or 1965. Since the unchanged 1964 and 1965

---

[3] Nathan Smith, who performed periodic accounting for petitioner, testified that he discussed the 63-percent gross-profit figure with Schreiber, who was handling the estate problems and "we decided that the most reasonable approach would be to take 5-years earnings back to 1964 and, in that way, determine some kind of a gross profit for the several years and, that way, we could develop an inventory at the beginning and ending of every one of those years."

inventories failed to conform with the open year inventory adjustments, the ultimate effect resulted in the shifting of $113,281.79 of petitioners' current income into a closed year or years, and hence was not reported.

At first blush, petitioners' inventory changes may innocently appear as a mere attempt to average income. Admittedly, for the taxable years in question petitioners were eligible to elect the benefits of income averaging under sections 1301–1305 of the 1954 Code which effectively mitigate the harshness of any income bunching without the disadvantages of imposing higher tax liabilities in earlier years which otherwise would be subject to interest. We note that petitioners' original 1967 return reflects the income-averaging election. In addition, petitioners were able to further soften the effect of any income bunching by splitting National's 1968 income between Albert's and Adeline's 1968 individual return and the 1968 fiduciary return. Neither party disputes National's income reported on the 1968 fiduciary return for National's operations during the period beginning August 1, 1968, and ending December 31, 1968, which period of operations is not subject to income averaging. Thus, the real substance of petitioners' inventory changes is the shifting of substantial amounts of current income ($113,281.79) into a closed year or years, which is not permissible under the law.

It is only by indulging, as petitioners urge us to do, in the probabilities of the matter that there appears to be any force whatsoever in the petitioners' contentions. But whatever the probabilities may seem to be, they are far outweighed by other considerations of greater importance. The mere existence of a year-to-year income disparity offers no more basis for a holding that the petitioners' earlier inventories were necessarily in error than the numerous possibilities suggested by respondent that the income disparity could have resulted from other circumstances which are likewise speculative in nature. No inventory records have been offered in evidence. The record is silent with regard to the critical facts because no one connected with National knew how Albert annually determined the value of the physically counted, prior year inventories. Without such evidence, we are unable to test the accuracy of petitioners' adjustments to the inventories in controversy and we cannot blindly approve petitioners' calculations for their own benefit. See *John Wanamaker Philadelphia*, 22 B.T.A. 487, 501 (1931), affd. 62 F.2d 401 (C.A. 3, 1932), certiorari denied 289 U.S. 738 (1933). See also *O. A. Steiner Tire Co.*, 9 B.T.A. 1289 (1928).

As we see it, petitioners cannot repudiate their inventories that have been consistently reported for several previous years merely on the opinion of petitioners' business representatives (Smith and Schreiber) that the gross profit in 1968 was "outlandish" in com-

parison to the previous years when Albert personally took the physical inventory of his merchandise. On issues of this kind, we may not rely on conjecture. Affirmative evidence of actual facts must be supplied by the taxpayer. If we were to indulge in the mathematical probabilities of the situation, there might be as many or more surmises proposed against petitioners' contention as could be suggested in favor of such position. *National Mill Supply Co.* v. *Commissioner, supra; Universal Steel Co.*, 16 B.T.A. 788 (1929), affd. 46 F.2d 908 (C.A. 3, 1931). See also *American Pitch Pine Exp. Co.* v. *Commissioner*, 188 F.2d 721 (C.A. 5, 1951), affirming a Memorandum Opinion of this Court; *W. P. Weaver Et Al.*, 2 B.T.A. 709 (1925).

In *Steel or Bronze Piston Ring Corporation*, 13 T.C. 636 (1949), where the taxpayer contended that the inventories as reconstructed by its accountants which it engaged for that purpose should be substituted for those used (as adjustments) by the respondent, the Court stated at page 644:

We may assume that the accountants made an honest effort to establish impartial inventories and that their calculations were based on the best records available to them in petitioner's books. The fact remains, however, that their computation is at best an estimate. It represents an effort on the part of the accountants to supply by theoretical calculations the vital factors which are lacking in petitioner's records. If, as petitioner admits, records are lacking on which correct inventories could now be established, the fault lies with the petitioner, and the hardship is of its own making. To meet the burden of overcoming the prima facie correctness of the Commissioner's determination the petitioner is required to do more than come forward with the best evidence available. It must submit evidence that shows the Commissioner's determination to be in error. In this, we think, the petitioner has failed.

Considering the record as a whole, we do not believe that the evidence of inventory evaluation adduced by petitioners is of sufficient probative value to overturn the respondent's determination.

*Decision will be entered under Rule 155.*