RONALD A. DE FUSCO and JANET T. DE FUSCO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
De Fusco v. Commissioner
Docket No. 4576-77.
United States Tax Court
T.C. Memo 1979-230; 1979 Tax Ct. Memo LEXIS 294; 38 T.C.M. (CCH) 920; T.C.M. (RIA) 79230; June 12, 1979, Filed Ronald A. De Fusco, pro se. James D. Vandever, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Lehman C. Aarons, pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and General Order No. 6 of this Court, 69 T.C. XV. [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. *295 OPINION OF SPECIAL TRIAL JUDGE AARONS, Special Trial Judge: Respondent determined a deficiency in petitioners' federal income tax for 1973 and 1970 in the respective amounts of $1689 and $876. The only issue for decision is the deductibility as a theft loss, under section 165 of the Code, [2] of $27,112, petitioners' investment in the stock of Equity Funding Corporation of America. 1973 was the year in which the loss was alleged to have occurred. The 1970 deficiency arises because of a claimed carryback of a portion of that loss. FINDINGS OF FACT Many of the facts were stipulated, and are found accordingly. Only those facts necessary for an understanding of this Opinion will be summarized below. Petitioners, husband and wife, resided in Fountain Valley, California, at the time they filed the petition herein. For convenient reference, "petitioner" when used in the singular herein shall refer to Ronald A. De Fusco. Petitioner was first associated with Equity Funding Corporation of America (EFCA) in 1968 when he was employed as a part-time agent. Petitioner's *296 relatively modest investments up to that time had been conservatively oriented and consisted primarily of mutual funds. During the period from November 1969 to January 1973 petitioner purchased and sold EFCA stock. In 1973 petitioner owned 684 shares of EFCA stock, including 104 shares purchased through a stock option plan. All of the shares were purchased in California. The stock option plan, pursuant to which petitioner purchased 104 shares directly from EFCA, permitted agents to purchase a number of shares determined under a formula at the market price on the day in which the agent became entitled to a commission on a sale of an insurance policy or other investment offered by EFCA. The remaining 580 shares consisted of open market purchases and stock dividends still held by petitioner in 1973. These purchases were made through the brokerage firm of Hornblower and Weeks. Petitioner's purchases were stimulated in large part by the glowing prospects portrayed to the salesmen at "brainwashing" meetings in the company offices. At some meetings the sales pitch was delivered personally by EFCA officers who were subsequently indicated and convicted. Some of the statements made *297 by the officers at such meetings constituted gross misrepresentations. In March 1973 trading in EFCA stock was suspended. In April 1973 the public was made aware of the likelihood that fraud had been practiced upon EFCA creditors and stockholders, and EFCA filed a petition under Chapter X of Bankruptcy Act. The Court-appointed trustee concluded that fraud and misconduct had existed and that it had been aimed at inflating the price of EFCA common stock. To that end, EFCA had recorded non-existent income and non-existent assets and had failed to report all of its liabilities. Many criminal indictments, including among others, mail and securities fraud, filing false statements, and perjury, were handed down against the former officers. All the principal officers either pleaded or were found guilty. None of the indictments was for "theft" under the California Penal Code, so far as appears in the record herein. Petitioner had put up EFCA stock as collateral for a bank loan, and when trading in the stock was suspended, the bank informed him that it was no longer acceptable as collateral. The trustee reported that EFCA had always been unprofitable and would have reported a loss *298 for every year without considering the fraudulent income. The National Daily Quotation Bureau, which issues a daily service to brokers on bid and ask prices for unlisted stock, ceased quotes for EFCA stock in 1973. The EFCA loss was a financial disaster for petitioners. It came close to wiping out their lifetime savings. It necessitated a complete reorientation of their life-style--aggravated by the necessity of paying off the bank loan which they had collateralized with EFCA stock. Petitioners believed in 1973 that their EFCA investment was a total loss. Early in 1976 petitioner submitted a claim to the trustee in the reorganization proceedings as a Class 8 creditor, comprising persons who lost money in trading EFCA stock and debt instruments. In his Memorandum and Order Approving Plan of Reorganization dated December 8, 1975, the United States District Judge stated, in part: Creditors in Class 8 raise a serious issue of law. They contend that they have claims against EFCA for common-law fraud and Securities Acts violations which should rank on a parity with the claims of general unsecured creditors. The Trustee has acknowledged that persons (other than those who had *299 knowledge of the machinations with EFCA) who acquired EFCA securities over the years were the victims of fraud and Securities Acts violations. There is authority for the proposition that a fraud claim, even if based upon stock acquisition, is on a parity with general unsecured claims in a reorganization proceeding. Acceptance of this proposition would probably violate the expectations of all parties, because stockholders ordinarily are entitled to no recovery from an insolvent company. This bona fide issue has not been authoritatively resolved. * * * The bankruptcy court resolved the doubts in this area by granting to the Class 8 creditors stock ownership rights in a new corporation (Orion Capital Corporation) worth, for accounting purposes, about 12 cents per dollar of the Class 8 creditors' losses. Petitioner actually received his 238 shares of Orion in 1977. He reported as ordinary income the value of this stock, which was actually worth substantially less than 12 cents per dollar of his claim. General creditors of EFCA received more substantial distributions than did the Class 8 creditors. OPINION In a Joint Motion for Continuance of this case (which the Court granted *300 in 1978) the parties stated: The parties have also been informed that at least one other case involving Equity Funding Corporation of America has been submitted to the Court for decision. It is believed that the Court's decision in that case may resolve some or all of the issues in the present case. The case referred to is Barry v. Commissioner,T.C. Memo. 1978-215, and it is our view that it has resolved the issues in the present case, at least with respect to the stock petitioner purchased on the open market. Although the instant case involves California law and Barry involved New York law, we do not believe that this difference affects the result. The question whether a "theft" occurred is, of course, determined by the law of the state where the loss was sustained. Paine v. Commissioner,63 T.C. 736, 740, affd. without opinion, 523 F.2d 1053 (1975). As we read section 484 of the California Penal Code, its definition of "theft" is not materially different from the New York law which was considered in Barry.Section 484 states the general definition of "theft" as follows: (a) Every person who shall feloniously steal, *301 take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. * * * These provisions require the same intent on the part of the defrauder to obtain for himself the victim's property as does the New York statute considered in Barry. EFCA's officers were not prosecuted under the California theft statute, and as unforgivable as were their sins in other respects, we cannot determine that they committed a theft of petitioner's property in respect of petitioner's open market purchases of EFCA stock. Cf. Bellis v. Commissioner,61 T.C. 354 (1973), affd. 540 F.2d 448 (9th Cir. 1976), also involving an alleged stock fraud claimed as *302 a theft under California law. The theft loss in Bellis would have been allowed had a felonious intent been proven. But the relationship between the alleged defrauder and the victim in Bellis was one of privity, i.e. seller and buyer, respectively; the lack of such relationship here is the fatal flaw in petitioner's case. We also note that under California law it is unnecessary to prove that the defrauder benefitted personally from the fraudulent acquisition. People v. Ashley,42 Cal. 2d 246, 267 P.2d 271 (1954); People v. Jones,36 Cal. 2d 373, 224 P.2d 353 (1950). But those cases also underscore that there must at least be an appropriation by the defrauder of the victim's property-- an essential element of theft which is lacking in the instant case. With respect to the option stock which petitioner acquired from EFCA respondent states in his brief as follows: [Respondent] now agrees that a theft may have occurred. * * * In certain instances, theft losses have been determined to have occurred where the responsible officers of a corporation have made false representations which resulted in the corporation obtaining possession of *303 the victim's property. See Rev. Rul. 71-381, 1971-2 C.B. 126 and Rev. Rul. 77-18, 1977-1 C.B. 46. In the instant case, it appears that EFCA had, through its officers, the specific intent to deprive the petitioners of their property and did, in fact, obtain property from the petitioners by making false representations to them regarding the value of the stock. * * * We read the foregoing as a concession that a theft occurred with respect to the option stock. However, there still remains the issue whether there was a closed transaction in 1973. Section 1.165-1(d)(3), Income Tax Regs., provides: Any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers the loss (see § 1.165-8, relating to theft losses). However, if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received.
This *304 regulation has been upheld as a reasonable and valid interpretation of section 165(e). Ramsay Scarlett & Co. v. Commissioner,61 T.C. 794 (1974), affd. 521 F.2d 786 (4th Cir. 1975). Petitioner contends that his stock was worthless in 1973 and that there was no reasonable expectation in that year of any recovery. In support of his contention he points to EFCA's insolvency, the cessation of market activity in the stock, and the sudden unacceptability of his stock as loan collateral. Petitioner argues (as did the District Court in the Memorandum approving the Plan of Reorganization) that stockholders ordinarily expect no recovery from an insolvent company. An objective standard is to be applied in evaluating petitioner's prospects of recovery. A reasonable prospect exists where a taxpayer has a bona fide claim for recovery against third parties or others. Ramsay Scarlett & Co. v. Commissioner,supra at 811. It is our view that a reasonable prospect of some recovery existed for petitioners in 1973. As the District Judge pointed out, this was not an ordinary case of a stockholder in an insolvent company. There were fraud claims *305 which might even have elevated the stockholders to a parity with general creditors. In addition, petitioner could have brought suit against the officers of EFCA directly. We find the language of the Court in Barry appropriate here. * * * As Class 8 fraud claimants in the Chapter X reorganization proceeding, it would appear that in 1973 there existed a claim for reimbursement with respect to which there was a reasonable prospect of recovery, thus precluding the deduction of any loss in that year. Section 1.165-8(a)(2), Income Tax Regs. Aside from the reorganization proceeding, there was also the possibility that the alleged loss could be recouped by legal actions against responsible third parties. Hence this situation is analogous to those cases in which litigation may be or has been instituted and where a reasonable prospect of recovery necessitates the postponement of any deduction in the year claimed. See Ramsay Scarlett & Co. v. Commissioner,61 T.C. 795 (1974), affd. 521 F.2d 786 (4th Cir. 1975)
In accordance with the foregoing, Decision will be entered for the respondent.
Footnotes
1. Pursuant to General Order No. 6 dated March 8, 1978, the post-trial procedures set forth in Rule 182 of this Court's Rules of Practice and Procedure are not applicable to this case.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩